```
 1                   UNITED STATESDISTRICT COURT
                     SOUTHERN DISTRICTOF FLORIDA
 2                        MIAMI DIVISION

 3                     Case 02-20473-CR-CMA

 4    THE UNITED STATES OF AMERICA,

 5              Plaintiff,

 6       vs.
                                      MIAMI, FLORIDA
 7    BRUCE COWEN,                    JUNE 14, 2005

 8              Defendants.

 9

10              TRANSCRIPT OF SENTENCING PROCEEDINGS
             BEFORE THE HONORABLE CECILIA M. ALTONAGA,
11                UNITED STATES DISTRICT JUDGE

12

13    APPEARANCES:

14    FOR THE GOVERNMENT:

15                        THOMAS A. HANUSIK
                          Fraud Section, Criminal Division
16                        United States Department of Justice
                          1400 New York Avenue, Room 4106
17                        Washington, D.C. 20005 - 202/305-9800

18

19
      REPORTED BY:
20
                          BARBARA MEDINA, RPR-CP
21                        Official Federal Court Reporter
                          Federal Justice Building, Ste. 1155
22                        301 North Miami Avenue, Ste. 404
                          Miami, FL  33128 - 305/523-5518
23                        E-mail address:  barbmedina@aol.com
                                           barbmedina@yahoo.com
24

25
```

TOTAL ACCESSTM COURTROOM REALTIME TRANSCRIPTION

2

FOR DEFENDANT:

WILLIAM AARON, ESQ., Local Counsel

CARLOS F. NEGRETE, ESQ.
Law Offices of Carlos F. Negrete
27422 Calle Arroyo
San Juan Capistrano, CA 92675  949/493-8115
Email:  cnegrete1@hotmail.com

ALAN ELLIS, ESQ.
Law Office of Alan Ellis
910 Irwin Street
San Rafael, CA 94901    415/460-1430
Email:  aelaw1@aol.com

                - - - - -
                TABLE OF CONTENTS

                                                    Page

Carrie Rundle ........................................... 28

    Direct Examination By Mr. Negrete .................... 28

Reporter's Certificate .................................. 53

                INDEX TO EXHIBITS

| Exhibits | Marked for | Received |
| | Identification | in Evidence |
| Description | Page | Line | Page | Line |

CITATION INDEX

                                                    Page
Ranum ...................................................... 8

Rodriguez ................................................. 7

U.S. versus Phelps ...................................... 10

U.S. versus Rodriguez ................................... 26

United States versus Huerta-Rodriguez ..................... 10

United States versus Maung ............................... 17

Wilson .................................................... 8

SIDE-BAR CONFERENCE INDEX

Descriptions                                        Page

4

```
 1        THE COURT:  Good morning.

 2        MR. HANUSIK:  Good morning, Your Honor.

 3        THE COURT:  Everyone please be seated.

 4        In the matter of United States versus Bruce Cowen,

 5   could I have appearances for the record?

 6        MR. HANUSIK:  Thank you, Your Honor.  Tom Hanusik, for

 7   the United States.

 8        MR. AARON:  Good morning, Your Honor.  William Aaron,

 9   local counsel for Mr. Cowen.

10        Also present is Carlos Negrete, counsel for Mr. Cowen,

11   and I would like to take this opportunity to introduce to the

12   Court Alan Ellis.

13        Mr. Ellis is a nationally recognized authority in

14   sentencing and Sentencing Guidelines.  He is a lecturer in

15   criminal law education programs for attorneys.  He has been an

16   author of many, many articles, including most recently for the

17   ABA, "Litigating in the Post-Booker World."

18        Mr. Ellis is here from California and Pennsylvania

19   where his office is.

20        THE COURT:  Good morning.

21        MR. ELLIS:  Good morning.

22        THE COURT:  Welcome.

23        From Probation?

24        THE PROBATION OFFICER:  Debra Speas, Your Honor.

25        THE COURT:  We're here for Mr. Cowen's sentencing
```

5

1    hearing.  Let me hear first from Mr. Hanusik.

2          MR. HANUSIK:  Thank you, Your Honor.

3          I have filed yesterday a motion for downward

4    departure, as well as a response to the defendant's sentencing

5    memo.

6          I will, at this point, only address the motion for

7    downward departure since I don't have anything to respond to

8    until I hear from them.

9          Let me, for Barbara's benefit, move closer to the

10   mike.

11         The motion, I think, sets forth the basis for the

12   downward departure.  The Court itself has, obviously, observed

13   Mr. Cowen on, I guess, four separate occasions during two

14   trials where he testified at length as part of his cooperation

15   with the Government.

16         Mr. Cowen was not the first person to plead guilty in

17   this case, but he was the second person to come in.  He did

18   come in pretrial.  He came in timely, in other words.

19         He has had 15 or so meetings with the Government.

20   These have included extensive debriefings, document review,

21   standard data downloads from him to us.  There have been

22   numerous telephone conferences as well.

23         I would say, for the record, Mr. Cowen has always

24   shown up prepared to assist the Government.  He has shown up

25   ready and willing and able to lend his efforts, his insights to

6

1   provide all information at his disposal for the benefit of the

2   Government and to substantially assist the Government in its

3   ongoing prosecutions in the case of Mr. Kelly and the ongoing

4   investigation, which is really not a matter of public record,

5   but there is an ongoing criminal investigation he has

6   participated in, substantially assisted the Government in.

7   　　　He was always willing to testify.  He has expended his

8   own funds to fly across the country to meet with the Government

9   on numerous occasions.  I saw an affidavit in which I believe

10  he said he spent more than $10,000.  I have no reason to doubt

11  that was the amount.  I am sure it is.

12  　　　There were a significant number of meetings where he

13  did come to Miami and Washington, D.C. for the convenience of

14  this prosecutor.

15  　　　He has substantially assisted the Government by

16  testifying at two different trials.  He has helped through

17  ongoing cooperation in an existing investigation which includes

18  a parallel investigation for the SEC.  I realize that's a civil

19  investigation, but it's a parallel investigation, so we think

20  mention of that is warranted in this case.

21  　　　The result is that we have recommended a 40 percent

22  departure from whatever the Judge now believes under the new

23  regime of advisory Guidelines would be a reasonable sentence.

24  We think that's an appropriate reflection of the assistance

25  that he has provided and also a reflection of the fact that his

7

1  plea alone already provides a benefit of five years versus the

2  original Guideline calculation of 87 months.

3          THE COURT:  Thank you, Mr. Hanusik.

4          I'll hear from defense counsel.

5          MR. ELLIS:  May it please the Court.

6          Before starting, I would like to, if I may, take the

7  opportunity to indicate several members of Mr. Cowen's family

8  are in the court today and if, with the Court's permission, I

9  would just ask them to stand up.

10          THE COURT:  Certainly.

11          MR. ELLIS:  Thank you.

12          Your Honor, responding to the Government's 5K1.1

13  motion, I have no quarrel with the motion itself.  The only

14  thing I would point out to the Court, and it's pointed out in

15  our sentencing memorandum at page 29, that the Guideline range

16  in this case is 60 months.  It's not 87 to 108, and that's

17  clear under USSG § 5G1.1, which says where the maximum sentence

18  is lower than the otherwise Guideline range, the Guideline

19  range is the maximum sentence, which in this case is 60 months,

20  and the Rodriguez case, cited on page 29, indicates that the,

21  any downward departure should come from the 60 months and not

22  the otherwise, the other range.

23          To that end, we received the Government's sentencing

24  memo yesterday and I just would like, if I may, to respond to a

25  couple of points that my learned brother at the bar,

1  Mr. Hanusik, has made, I think, if I may.

2          THE COURT:  Certainly.

3          MR. ELLIS:  Again, Mr. Hanusik, on page 3, indicates

4  that the resulting Guideline range is 87 to 108.  I have

5  addressed that.  It's 60.

6          Also on page 3 -- parenthetically, I must say

7  that -- Mr. Negrete and I were talking about this -- in

8  California one of the local rules is that all pleadings have to

9  be on numbered paper so it's easier for me to come in and say

10          "Page 3, line  26," as opposed to saying to the Court

11          "Three lines up from the bottom," but, in any event. . .

12          Under the argument section, which would be the first

13  full paragraph on page 3, the Government indicates that the

14  Booker Court upholds the remainder of the Guidelines as the

15  most appropriate benchmark for informing Courts.

16          Well, I reread, when I received this, I reread Booker

17  for the 47th time and there simply is no language in there to

18  that effect whatsoever.

19          As the Court is aware, the Courts are split on this

20  issue as to what weight to give the Guidelines.  There is the

21  Judge Wilson -- Judge Cassell, rather -- in the Wilson case,

22  the Wilson school of thought, which says that you give

23  substantial weight to the Guidelines.

24          Then there is the Ranum school, Judge Edelman's school

25  of thought, both of which had adherence that says, "No,

1  the Guidelines are only one of several factors to be taken
2  into consideration and to be given no more weight than the
3  other factors" and, of course, Judge, the Wilson school is the
4  school The Department of Justice advocates and the Judge
5  Edelman Ranum point of view is that which the Defense Bar
6  advocates --  that's why God created prosecutors and defense
7  lawyers -- and there is no Appellate Court in the country yet
8  that has yet decided that issue.

9         So, the only decisions that we're seeing are District
10  Court decisions on that issue.  I researched the issue and I
11  didn't see anything by this Court on what side it comes down
12  on.

13         On page 4, the Government states that a sentence
14  within the advisory Guidelines is reasonable, per se.  No case
15  is cited in support of that.  I have a few cases that say
16  otherwise, and I'll just cite them, if I may, to the Court.

17         If Your Honor will bear with me for one moment,
18  please.

19         There is, of course, the Ranum decision, which I
20  mentioned.

21         Does the Court require that I point out the page or
22  the citation?

23         THE COURT:  No.

24         MR. ELLIS:  The other two cases that say that a
25  sentence within the advisory Guidelines is not, per se,

1   unreasonable are United States versus Huerta-Rodriguez, 355

2   Supp. 2d 1019, District of Nebraska, 2005, and U.S. versus

3   Phelps, P-h-e-l-p-s, 366 Supp. 2d 580, Eastern District of

4   Tennessee, 2005.  Again, no appellate cases on this issue.

5           Back to the Government's sentencing memorandum.  The

6   Government cites on page 5, the second paragraph, it remains

7   true that absent unusual circumstances, the sentence in a

8   criminal case should fall within the Guideline range.  Again,

9   this is not accurate.  Ranum says, does not use the words

10  "unusual circumstances" and, again, the test we would submit is

11  is the sentence greater but not sufficient, but not necessary,

12  sufficient but not greater than necessary to achieve the

13  purposes of sentencing, et cetera, et cetera.

14          On page 8 where the Government discusses the offense

15  in the context of Cowen's life, I just wanted to point out that

16  Mr. Cowen was not simply distracted from the time of his wife's

17  giving birth in July.  I recognize this offense occurred,

18  continued from April to December, but as the Court will recall,

19  Mrs. Cowen was put under bed rest from April onward when she

20  started experiencing difficulties with her pregnancy.  Again,

21  this is not an excuse for his behavior.  We just pointed this

22  out so as to put Mr. Cowen's behavior in context.

23          At page 9, Footnote 3, the Government discusses the

24  public safety factor.  The Bureau of Prisons, as the Court is

25  aware, has several public safety factors.  Some of them are,

1   indeed, designed to protect the public.  For example, the

2   Bureau of Prisons has what's called a Sex Offender Public

3   Safety Factor which precludes anybody with a sex offense from

4   going into a camp, and the Bureau's rationale is quite

5   understandable.  They are concerned somebody might walk off a

6   Federal prison camp --  as the Court is aware, there are no

7   fences around a Federal prison camp -- and molest a child in

8   the neighboring community.  I have no quarrel with that.

9         Similarly, people who have committed violent crimes

10   are assigned what's known as a greater severity, greater

11   severity public safety factor.  Again, no problem with that

12   because I don't want somebody to walk off a Federal prison camp

13   and committing a violent crime.

14         With respect to the serious telephone abuse, I really

15   can't say the same, that it's there to really protect the

16   public from somebody who walks off, and I have a copy of that

17   public safety factor, if the Court would like to see it.

18         THE COURT:  Certainly.

19         Do you want to share it first with Mr. Hanusik?

20         Have you seen that as well?

21        MR. HANUSIK:  I have not.  I don't dispute if

22   Mr. Henderson says it's a public safety factor for the Bureau

23   of Prisons, then it is.

24        MR. ELLIS:  What I starred is the section that would

25   apply to Mr. Cowen.

1          THE COURT:  Thank you.

2          MR. ELLIS:  Again, as Mr. Henderson states, this would

3   cause him to be incarcerated in a low level security facility,

4   as opposed to a minimum.  As the Court is aware, the BOP has

5   four levels, minimums, which are the camps, lows, which are the

6   next level, mediums, which are the next level, and highs, which

7   are the penitentiary.

8          You find very few white collar offenders in lows.  It

9   can be a pretty dangerous place.

10         Next comes the restitution analysis and, as the Court

11  is aware, in our sentencing memorandum we addressed two issues.

12  Our major issue is that procedurally the Government was

13  required to provide the information, the identity of the

14  individual victims and how much was owed to them, 60 days prior

15  to the original sentencing date which was February 23.

16  Probation advises this did not happen.

17         The next step is that if Probation or the Government

18  feels an extension of time for the restitution hearing is

19  required, that it asks the Court within 10 days prior to this

20  sentencing date to do so and, again, neither -- well, the

21  probation officer indicates in its PSI there may be a need for

22  that because the individual victims cannot be identified at

23  this time, but, again, that report was filed on Friday and

24  that's not, you know, within or outside the 10 day period and

25  the Government has made no request for this 90 day hearing.

1          Our position would be --

2          THE COURT:  I'm sorry.  What report were you

3    indicating was filed on Friday?

4          MR. ELLIS:  The presentence investigation report.

5          No?

6          THE PROBATION OFFICER:  Your Honor, in reference to

7    Probation, the law actually states that the Government has to

8    notify Probation --

9          MR. ELLIS:  Right.

10         THE PROBATION OFFICER:  -- within 60 days.

11         MR. ELLIS:  Did I misspeak?  I'm sorry.

12         THE PROBATION OFFICER:  What has happened is the

13   Government has actually, while it did not notify Probation and

14   provide Probation a list of the victims, what it has done is

15   there is a receivership and there is a person who has been set

16   up who is actually, has the list and the individual victims

17   have been identified, and once Probation was notified of this,

18   the Government actually took on the cost of sending out the

19   letters notifying the victims and Probation was informed that

20   that was done and Probation actually was in contact with the

21   person in Washington, and our restitution person spoke to the

22   person in Washington and coordinated that activity.  So, that

23   was done and that prong of the statute was satisfied.

24         THE COURT:  Thank you, Ms. Speas.

25         THE PROBATION OFFICER:  And the information in the

1    original PSI that was disclosed in May notified the Court there

2    may be additional victims, because I misunderstood a chart that

3    was provided to me that identified some additional -- I

4    misunderstood there were additional victims outside of the one

5    group when, actually, it was victims within the same group but

6    under a different heading, once I spoke to Mr. Hanusik and he

7    assured me it was all within the same group -- it was just a

8    sub-group heading -- then I took that wording out in the

9    revised PSI that was disclosed on Friday.

10            That's what the attorney is speaking of.

11            So, while the Court may be able to proceed today and

12   make a finding as to restitution, I don't have the individual

13   names and addresses myself.  The Government does, and the

14   Government will be able to provide me a list that I can give to

15   the Clerk's office.

16            The amount can be determined by the Court.  It can do

17   it today or it can do it within 90 days.  The amount, the

18   Government is ready to proceed with.

19            The notices have been met.  The statute has been met.

20   Probation is satisfied and I believe all the requirements have

21   been met, Your Honor.

22            THE COURT:  Thank you, Ms. Speas.

23            THE PROBATION OFFICER:  Thank you.

24            MR. ELLIS:  Your Honor, if I can briefly respond to

25   that?

1       18, U.S.C., § 3664(a) provides that "For Orders of

2    Restitution under this title, the Court shall order the

3    probation officer to obtain and include in the presentence

4    report or in a separate report, as the Court may direct,

5    information sufficient for the Court to exercise its

6    discretion in fashioning a Restitution Order.  The report

7    shall include, to the extent practicable, a complete

8    accounting of the losses to each victim, any restitution

9    owed," et cetera, et cetera.

10       We have not seen that.  I don't know if the Court has

11   seen that.

12       The Court clearly cannot enter a Restitution Order

13   today without having that information in front of it.  The

14   Court can't just simply say "Pay the restitution over to the

15    receiver or to the SEC."

16       It has to be paid -- the Order has to specify the

17   victims, the amount they are owed and so forth.

18       THE COURT:  Perhaps we can just all agree on a date

19   within the next 90 days to bring you all back for that and I

20   can direct Probation to prepare a separate report with that

21   information as § 3664 allows for.

22       MR. ELLIS:  Yeah.

23       The only problem with that is that in order to trigger

24   that, Probation or the Government -- under 3663(d)(5) it

25   indicates that within 10 days prior to sentencing, the attorney

1  for the Government or the probation officer shall so inform the

2  Court and the Court shall set a date for the final

3  determination of the victims' losses not to exceed 90 days

4  after sentencing, and while Probation may have indicated that

5  the losses are not ascertainable in its draft PSI -- I don't

6  know whether the draft PSI in this District is filed with the

7  Court.  Routinely, it's not.  It's the final version that is

8  filed with the Court, and I believe that final version was

9  filed with the Court on Friday which, of course, is not outside

10  the 10 days.

11         THE COURT:  No, the PSI was prepared before Friday.

12         MR. ELLIS:  So, does the Court --

13         THE COURT:  And I received it before Friday.

14         What Ms. Speas indicated, it was revised to delete

15  those portions on Friday.  I had it before then.

16         MR. ELLIS:  Did the Court have it within 10 days or --

17         THE COURT:  I don't have the exact date I received it,

18  but I know I had it well before.  In fact, Mr. Negrete,

19  Mr. Hanusik and I had a telephone conference when we were

20  discussing today's sentencing date with respect to the

21  disclosure of the presentence report.

22         MR. HANUSIK:  That's correct, Your Honor, and that's

23  before the last sentencing date.  Certainly more than 10 days

24  ago.

25         THE COURT:  Yes.

1          MR. ELLIS:  Well, I'm not going to argue the point.

2     You know, frankly, I feel a little strange arguing, you know,

3     technicalities.

4          I'm a sentencing authority.  I deal in equity.  The

5     law is the law, and there is an 11th Circuit case on

6     restitution, United States versus Maung, 267 F.3d 113 at 117,

7     11th Circuit, 2001.  In that case the restitution hearing was

8     held beyond the 90 days.

9          The Government argued that --

10         THE COURT:  We won't do that here.  I assure you we'll

11     hold it well within the 90 days, and I am very familiar with

12     that jurisdictional prerequisite.  It has to be within the 90

13     days.

14         MR. ELLIS:  Yes, it does.

15         I just want to point out the Court of Appeals made

16     clear the law is the law.

17         THE COURT:  I am ever mindful I must follow the law as

18     well.

19         MR. ELLIS:  Okay.

20         THE COURT:  In fact, can we give them a restitution

21     date, Patricia, right now?  You can put it in your calendars.

22     Mr. Negrete will be in China for some time.  We can do it

23     probably near the end of July.

24         Does that give the Government enough time,

25     Mr. Hanusik, or early August?

1          MR. HANUSIK:  Early August would be preferable.  I

2     don't think I'm available in July.

3          THE DEPUTY CLERK:  August 5th is a Friday.  Is that a

4     good day for everyone?

5          MR. NEGRETE:  I don't have the benefit of my calendar

6     here.  I tend to have bad luck picking dates.

7          If I have a conflict, I would like to advise the Court

8     and will do so immediately.  I believe August 5th would be

9     okay.

10          MR. HANUSIK:  I don't know if Mr. Negrete remembers

11     this, but I think during our telephone conference call that was

12     one of the dates he suggested for sentencing.

13          I think your calendar is pretty clear.

14          THE COURT:  We'll set aside the whole day for your

15     restitution hearing.  If you need less time, let us know.

16          MR. HANUSIK:  Thank you, Your Honor.

17          MR. NEGRETE:  August 5th at what time?

18          THE COURT:  Starting at 8:30.

19          MR. NEGRETE:  Thank you, Your Honor.

20          MR. ELLIS:  And, Your Honor, I have been informed and

21     was informed by the reading of the transcript in the Huard

22     case, that this Court reads everything, which is why we made

23     sure we filed our sentencing memorandum and appendix 10 days

24     prior to sentencing.

25          With that having been said, unless the Court wants to

1   hear from me to hit the highlights of our sentencing

2   memorandum, I know the Court in Huard indicated that it had

3   arrived at a tentative sentence and Mr. Robinson, the counsel

4   for Huard, says what I always say, which is "A good lawyer

5       knows when to sit down and shut up."

6           If the Court does have in mind a tentative sentence or

7   has, and/or has any questions for me, I would be happy to

8   address it at this time.

9           THE COURT:  No, I don't have a tentative sentence in

10  mind.

11          I think there were certain issues you raised in your

12  sentencing memorandum, namely, that I believe the defendant's

13  position here is that the sentence I gave the Codefendant Huard

14  in some way places a cap on whatever sentence it is I should

15  impose here, and that if I were to oppose any sentence that

16  included a period of incarceration, it would be far too

17  punitive, particularly -- I am paraphrasing -- particularly in

18  light of the sentence Mr. Huard received, notwithstanding the

19  fact Mr. Cowen has scored out higher under our advisory

20  Guidelines than did Mr. Huard.

21          So I am keeping an open mind to hear your arguments.

22          MR. ELLIS:  Very good.

23          I am not arguing -- I have not suggested Mr. Huard's

24  sentence is a cap on what you could oppose on Mr. Cowen.

25  Indeed, we proposed a sentence that is 50 percent greater than

1    Mr. Huard.

2         THE COURT:  Well, a cap in the sense incarceration

3    should not be a potential sentence in this case, that all I

4    should consider is sentencing Mr. Cowen to five years probation

5    and double up the special conditions.

6         MR. ELLIS:  Yes, essentially so.  Again, it's not just

7    on disparate reasons alone.

8         Page 32 of our sentencing memo indicates, goes through

9    the four purposes of sentencing under 18 U.S.C. § 3553(a)(2)(A)

10   and talks about the first purpose of sentencing, the first goal

11   of sentencing is retribution, and, again, the only thing I

12   would say there is -- again, this is candidly, perhaps, not our

13   strongest argument because the Court could decide more

14   punishment is necessary for Mr. Cowen than Mr. Huard.

15        I would point out, however, we have argued Mr. Cowen,

16   as has Mr. Huard, as was Mr. Huard, been already punished

17   significantly.

18        His health, the fact that he is, basically, out of

19   work at this point, and, so, insofar as the purpose is to

20   provide just punishment, I am not saying he has been punished

21   enough, but he has been significantly punished.

22        With respect to the second goal of sentencing,

23   deterrence, if we're talking about general deterrence, I think

24   the Court has spoken in the Huard sentence that by placing him

25   on probation, this case did not require a sentence of

1   imprisonment to deter others from doing the same thing.

2         With respect to specific deterrence for Mr. Cowen,

3   again, we point out he is very, very unlikely to reoffend.  I

4   gave the Court some data from the Sentencing Commission which

5   shows that people over 50, the likelihood of recidivism is 6

6   percent, which is the lowest for any age group in the study,

7   and I don't think anybody would seriously question Mr. Cowen is

8   going to go out and commit another crime.

9         A sentence of probation meets the third goal of

10  sentencing, protecting the public.  I don't think anybody here

11  would argue Mr. Cowen is a threat to the public and, again, I

12  cited the 6.2 percent figure from the Commission's report.

13         Finally, a sentence of probation meets the fourth goal

14  of sentencing, meeting the defendant's needs.  Mr. Cowen has

15  some serious health problems that can be better addressed in

16  the community and 18 U.S.C. § 3553(a)(2)(D) says the fourth

17  goal of sentencing is to provide -- this is on page 36 --

18  provide the defendant with needed education or vocational

19  training, medical care or other correctional treatment in the

20  most effective manner, and as Dr. Faerstein has pointed out in

21  his report, the most effective manner would be to treat him in

22  the community at, of course, a savings to the Government.

23         Unless the Court has any questions?

24         THE COURT:  I think we'll hear Mr. Hanusik's response

25  and then you, perhaps, could address these points again.

1          Thank you.

2          MR. HANUSIK:   Thank you, Your Honor.

3          As Your Honor knows, we received the sentencing memo

4     from the defendant last Thursday.  I spent the majority of my

5     time over the weekend responding to it, but, really, focusing

6     on the restitution issue, not some of these other issues.

7          Frankly, there is a good reason for that.  The reason

8     is, basically -- if I could sort of address the points in order

9     that Mr. Ellis raised them.  He talked about Mr. Cowen has

10    already been punished and, therefore, should get probation

11    based on the impact on his health, the fact he is out of work

12    and the other sort of collateral consequences that come along

13    with pleading guilty to a felony.

14         I don't dispute any of that is true, Your Honor, but I

15    would point out that the United States has made a significant

16    reduction recommendation on top of a reduction that was already

17    given in the form of a five year cap.

18         No one is suggesting -- I don't quibble with whether

19    the words "Guideline range" is correct or not, but the United

20    States is saying the 40 percent should come off whatever you

21    determine to be the reasonable range.

22         I don't think anyone could legally argue you could go

23    above 60 months and determine that to be reasonable when you

24    have a 60 month cap.  I think we're all on the same page, but I

25    do think we're talking about 40 percent off what you determine

1    to be reasonable.  You may determine it's less than 60 months

2    as well, but we are not really in dispute on that issue.

3         I think the issue with respect to Mr. Huard and the

4    comparison is one that the Court seems interested in and I'd

5    like to address for a minute.

6         As I mentioned earlier, Mr. Huard was the first person

7    in the door and Mr. Huard certainly gets more credit for that.

8    I would also point out Mr. Huard pled only to the undercover

9    kickback scheme.  Mr. Cowen had a more expansive plea that

10   involved the manipulation and the undercover kickback scheme.

11        The difference, really, is that under the advisory

12   Guidelines, what were then the mandatory Guidelines,

13   Mr. Huard's was looking at 46 months.  Mr. Cowen is looking at

14   87.  He got an immediate benefit of 27 months by going to a 60

15   month cap.

16        If the Court were to start there and accept the

17   Government's recommendation and take 40 percent off, that would

18   be an additional 24 months.

19        If, with respect to looking at it in terms of time,

20   Mr. Cowen would be getting 51 months off.  That's more than

21   Mr. Huard was ever facing.  Mr. Huard was only facing 46

22   months.

23        The loss was a different amount for Mr. Huard.  It was

24   $1.5 million.  It was all intended loss, no real loss.  Here we

25   have real loss by virtue of the Lancer investors who were

1   defrauded as a result of the conspiratorial conduct Mr. Cowen

2   participated in.

3          Mr. Cowen's plea agreement stops both him and the

4   Government for arguing for any further adjustments to the

5   agreed upon Guidelines.

6          Mr. Cowen's lawyer told me the other day they were

7   going to argue for not adjustments, but variances.  Those

8   variances seem to consist of economic hardship, collateral

9   consequences, aberrant behavior and family responsibilities.

10  When I look at the Guidelines, advisory or mandatory, those are

11  all departure bases under the Guidelines.  5K2.12 is economic

12  hardship.  5K2.20 is aberrant behavior, and 5H1.1 or 4, which

13  is the family responsibilities and health issues.

14         The health thing, I'm not a doctor, so I don't know

15  where he could be best served, but I did take a look at

16  Mr. Ellis' very informative book on Federal prisons last night.

17  There are 15 facilities that I found on the west coast, western

18  region of the United States.  10 of those facilities have

19  in-patient care and the other 5, out-patient care.  I think he

20  can be served, certainly, in terms of his health issues at a

21  Federal prison facility.

22         With respect to the one other issue, general

23  deterrence, I would just point out that Mr. Ellis may or may

24  not believe probation is an appropriate deterrent value for

25  someone like Mr. Cowen.  Mr. Cowen did have an SEC injunction

1  against future violations of the security laws in 1999.  That

2  was not an effective deterrent based upon the conduct, the

3  offense of conviction for which he pled guilty in 2003.

4          So, I don't know -- I understand the SEC is a civil

5  enforcement mechanism, but it still is a Federal Court

6  injunction that is mandated or it might be an administrative

7  court injunction in that situation.

8          The fact is it's an injunction against future

9  violations of the Federal securities laws.  It was not an

10  effective deterrent with respect to the crimes that were

11  committed in this case.

12          So, I think that the United States has made an

13  appropriate recommendation of 40 percent downward departure and

14  I think that reflects both the extensive level of cooperation,

15  which we certainly credit to Mr. Cowen.  I don't think there is

16  a big disparity between him and Mr. Huard because I think

17  Mr. Huard pled guilty to a different, basically, lower level

18  offense.  He was first in the door and, frankly, even if one

19  were to take all the time off of Mr. Huard, it's still not as

20  much as the Government is recommending comes off Mr. Cowen when

21  you consider the different starting months of 87 months versus

22  46 months.

23          I don't have anything else to add.  I think the rest

24  is set forth in our sentencing reply.

25          THE COURT:  Thank you very much.

1       MR. ELLIS:  Can I respond briefly, Your Honor?

2       THE COURT:  Certainly.

3       MR. ELLIS:  Your Honor, the 11th Circuit has held that

4  the 60 months in this case is the starting point for any 5K1.1

5  departure.  That's cited on page 29 of our sentencing

6  memorandum, U.S. versus Rodriguez, 64 F.3d 638, 11th Circuit,

7  1995.

8       Next, with respect to Huard, if I'm not mistaken, I

9  think the Government found, the Government argued the loss in

10 Huard's case was $6.2 million, the intended loss, as opposed to

11 Mr. Cowen's 4.3.

12      MR. HANUSIK:  He is mistaken, Your Honor.

13      MR. ELLIS:  I am mistaken?

14      MR. HANUSIK:  Yes.

15      MR. ELLIS:  With respect to departures and variances,

16 departures, as the Court is aware, are policy statements under

17 the Guidelines.  Variances are, really can be anything, even

18 those things that are prohibited departures, such as lack of

19 useful guidance could now be grounds for a variance.

20      So, I think the Supreme Court and I think all the

21 commentators recognized that.

22      Finally, I neglected to mention, 18 U.S.C. §

23 3553(a)(1) says that the Court, in determining the particular

24 sentence to be imposed, shall consider the nature and

25 circumstances of the offense --  I think we have addressed

1  that -- and the history and characteristics of the defendant.

2      In this case, Mr. Cowen has extraordinary community

3  and public service and, indeed, had he not agreed not to seek a

4  downward departure, I think I can say with a straight face that

5  even though that ground for a downward departure is what's

6  called a discouraged one, there are ample grounds for this

7  Court to, were it permitted, to depart based on other than

8  5K1.1 consideration, that this would have been a ground to

9  depart.

10      It's certainly a ground for a variance, and

11  Mr. Cowen's civic and charitable work as described at page 18

12  of our sentencing memorandum and also in the appendix itself.

13      THE COURT:  Mr. Hanusik.

14      MR. HANUSIK:  If I said $1.5 million intended loss by

15  Mr. Huard, I misspoke by half.  He had two separate cases.  It

16  was zero actual loss.  The intended loss was the same in each

17  case of $1.5 million.

18      I don't remember exactly the Medinah case.  That was

19  Mr. Hong's case.  I am pretty sure that was the intended loss,

20  not 6.2.

21      MR. ELLIS:  I got the $6.2 million figure from the

22  PSI.

23      THE COURT:  All right.

24      MR. NEGRETE:  Good morning, Your Honor.

25      I had been given the task of addressing restitution,

1   so I drew the short straw here.  I think that's going to come

2   from another day.

3        Being the passionate person I am here, they have given

4   me the task of the passionate testimony, and if I may, there

5   are several people here today and I would like to know if the

6   Court is willing to have them testify and explain or give the

7   Court a brief description of their feelings with respect to

8   sentencing.

9        Is that acceptable?

10       THE COURT:  Certainly.

11       MR. NEGRETE:  I would like to call Ms. Carrie Rundle.

12       CARRIE RUNDLE, DEFENDANT'S WITNESS, SWORN.

13                   DIRECT EXAMINATION

14       MR. NEGRETE:  May I proceed, Your Honor?

15       THE COURT:  Please.

16  BY MR. NEGRETE:

17  Q.  Ms. Rundle, are you familiar with Mr. Cowen?

18  A.  Yes.

19  Q.  What is your relationship with Mr. Cowen?

20  A.  I am his mother-in-law.

21  Q.  How long have you known Mr. Cowen?

22  A.  Since about 1998.

23  Q.  What is the relationship that Mr. Cowen has with your

24  family?

25  A.  Well, he is an anchor in our family, a strong member of our

1 family.  We have had some ups and downs in our family.  Bruce

2 has always been there and always has been the anchor.

3        When my husband, Katherine's father, had a serious

4 bout with cancer, which was extremely life-threatening, and her

5 baby, their baby was due two days later, Bruce was the one who

6 took care of the family in Southern California while I took

7 care of Bill and the family in Northern California and he, he

8 has always been there for us.  He is a good person, a good man,

9 wonderful father, a good son.

10        I would love it if he were my son.  He has elderly

11 parents and he cares for them.  He has an almost four-year-old

12 little boy who he is a wonderful role model to this child and

13 we would have a sad life without Bruce.

14 Q.  Ms. Rundle, your family has gone through some crisises

15 within the past year?

16 A.  Sure.

17 Q.  How has been Mr. Cowen with respect to those incidents or

18 those events?

19 A.  He is always there for us and he has a way of dealing with

20 what happens when it happens, and he does it on a very logical,

21 in a very logical way, and he has a solution.  It doesn't

22 always work because you are dealing with other people, but, for

23 the most part, his solution is right most of the time.

24 Q.  Do you feel that the absence of Mr. Cowen will have an

25 effect on your family?

1  A.  Yes, yes.

2  Q.  How do you believe it will affect your family?

3  A.  Well, it will affect his son.  My entire career was

4  teaching severely emotionally disturbed children who had been

5  traumatized.

6       It is my belief children need their parents, a father

7  or mother, if possible, or a father or a mother.  Bruce is a

8  good father.  He is a good uncle.  We have had some drama in

9  our family with one of our daughters, and he has been a role

10 model for those children.

11      He is a wonderful stepfather.  This is the reason that

12 I learned to love Bruce was early on he was so good to our

13 grandchildren, Katherine's children by a previous marriage and,

14 I mean, I could tell --  I have worked with people.  I worked

15 with children --  I could tell it was a sincere effort on his

16 part and I knew this is why I learned to love him.  He is a

17 good man, a good guy.

18      MR. NEGRETE:  Thank you.

19      Your Honor, I have no more questions of this witness.

20 I don't know if the Government has cross.

21      MR. HANUSIK:  No questions, Your Honor.

22      THE COURT:  Thank you, Ms. Rundle.

23      THE WITNESS:  You're welcome.  Thank you.

24      MR. NEGRETE:  Your Honor, I was going to address the

25 issue of cooperation also and it was my offer of proof, I was

1    going to call Agent Edy of the FBI to describe the level of

2    cooperation Mr. Cowen has provided.

3            Does the Court believe that is necessary?  He

4    substantially cooperated.

5            THE COURT:  I think that's understood.

6            MR. HANUSIK:  We made a motion to that effect.

7            THE COURT:  The Government's motion and 40 percent

8    request for reduction.

9            MR. NEGRETE:  Thank you, Your Honor.

10           Next, if I may, I believe Mr. Ellis had one more point

11   he wanted to cover.  I might have one other witness after that,

12   Your Honor.

13           THE COURT:  Very well.

14           MR. ELLIS:  It's an old story about there is three

15   Supreme Court arguments that a lawyer makes, the one that he

16   intends to make, the one that he makes and the one afterwards

17   that he wished he made.

18           Just to make sure I cover everything.

19           With respect to disparate, as the Court is aware -- of

20   course, it presided over the cases -- Kelly and Price were

21   acquitted, went scot-free.

22           The Court was, as is commonly called, the 13th juror

23   in that case.  Only the Court knows in its heart whether or not

24   Kelly and Price caught a real break.

25           I just have a problem with one of my clients going to

1    jail when people who were, obviously, more culpable than him

2    slid.  Is that the right expression?

3            MR. HANUSIK:  I guess I could only address that, Your

4    Honor, by saying the Government, obviously, respects the

5    verdict of the jury in those cases.

6            I am not intimately familiar with the Price case, so I

7    can't really speak to that.  I don't think Mr. Cowen had

8    anything to do with the Price case.

9            With respect to the Kelly case, I think everyone

10   recalls pretty well there was a lot of discussion, about 35 or

11   40 tapes which included both Mr. Kelly -- excuse me --

12   Mr. Huard and Mr. Cowen and only one significant tape, half of

13   which was erased through some malfunction, which included

14   Mr. Kelly and, again, I would just point out, like Mr. Huard,

15   the sentences that were -- excuse me -- the results of that had

16   only to do with the undercover operation and not the additional

17   manipulation for which Mr. Cowen has entered a guilty plea.

18           THE COURT:  Thank you.

19           Mr. Negrete.

20           MR. NEGRETE:  Thank you, Your Honor.

21           Before I forget, I would like to thank the Court and

22   thank Mrs. Speas for her work on this rather complex report

23   that she prepared.  It wasn't an easy task.  We spent a great

24   deal of time.  I do think she did a thorough job.

25           THE COURT:  She always does.

1           MR. NEGRETE:  Excuse me?

2           THE COURT:  She always does.

3           MR. NEGRETE:  She certainly does.  I think she went

4    the extra mile in this case and I appreciate her.

5           Also, I would like the Court to be mindful, and we

6    briefed it thoroughly in our brief about Mr. Cowen's health

7    concerns.

8           These are very serious, not to be taken lightly --  I

9    am sure the Court won't -- and I think they should affect the

10   type of sentence he receives.

11          Also, I have personally been very proactive with

12   trying to achieve resolutions with the Government on the civil

13   side, the SEC and the receiver.

14          Now, this may go to the restitution, but he certainly

15   has demonstrated his cooperation, and since there seems to be a

16   link between the restitution insofar as amount, he has done the

17   right thing.  He has come forward to the Government, to the

18   Court and voluntarily gone the extra mile with the civil side

19   in trying to craft his own restitution or do the right thing.

20          Now, obviously, he has entered his plea, but the plea

21   doesn't address his need or desire to go the extra mile with

22   the Government.  He voluntarily went forward.

23          There was some reference to an Administrative Order.

24   He has violated no Order in his conduct here today.  Nor has he

25   in the past.  That restriction was gone long ago, and, again,

1   in that situation he came forward and did the right thing.  We

2   have explained it in our brief.

3         Finally, Your Honor, I think Mr. Cowen would like to

4   give a statement to the Court indicating his position and his

5   present feelings, and if the Court welcomes that, I would truly

6   appreciate it.

7         MR. HANUSIK:  I would just address one thing.  I think

8   I made this very clear in our response to the defendant's

9   sentencing memo.

10        Perhaps this is sort of an opportunity for Mr. Cowen.

11  You have now set the restitution hearing date as at August 5th,

12  2005.  It is my understanding Mr. Cowen has not paid any money

13  to the SEC or the receiver for the benefit of the defrauded

14  investors.

15        To the extent that he does that between now and August

16  5, the Government's position will clearly be that he should be

17  credited for the payments made in any Restitution Order that

18  this Court would enter on that date.

19        So, we absolutely will credit him for any amounts that

20  he pays to the SEC and/or to the Lancer receiver when we make

21  our arguments concerning restitution.

22        THE COURT:  Thank you.

23        MR. NEGRETE:  Yes, Your Honor.  On that point, the

24  SEC's remedy was not seeking monetary compensation.  We have

25  dealt with that.

Rundle - Direct

1        The receiver is more of a unique situation.  In fact,

2   we wanted to create something.  They are in a chicken and egg

3   situation.  They are looking to the Court on one side, our

4   representative of the estate.  So we are in ongoing

5   negotiations and I believe we'll come to some agreement, but we

6   are constantly faced with this chicken and egg battle which,

7   hopefully, between the Government and myself and the receiver,

8   we'll reach some sort of conclusion, but those negotiations

9   have been ongoing all the way up to yesterday and I believe

10  they will continue to go forward.  I'm pretty confident that

11  we're going to achieve a civil settlement.

12       One of the key factors with the receiver, the SEC and

13  the Government has always been the cooperation of Mr. Cowen and

14  his almost unique testimony, information, ability to assist in

15  their cases.  Up to now he was very proactive with the SEC in

16  providing deposition testimony.  I had countless hours of

17  interviews with the SEC, as did Mr. Cowen.

18       The receiver has a greater task because they are going

19  to be facing, essentially, the key target and several corporate

20  targets in their investigation and remedies.  They are going to

21  far exceed whatever loss there is in this case or whatever

22  remedies in this case, and we have indicated we want to fully

23  cooperate.

24       We didn't ask any conditions to that cooperation, just

25  Mr. Cowen believed that was the right thing to do.  That has

 1  been his demeanor throughout.

 2         I can assure the Court the negotiations are

 3  continuing.  If you would like to craft some Order tied to that

 4  and, as Mr. Hanusik indicates, have accreditation, that would

 5  be helpful.

 6         That is the status as it is right now.

 7         MR. HANUSIK:  I should be real clear.  The

 8  Government's position, to the extent money is actually paid by

 9  August 5th, we would credit Mr. Cowen with that.

10         Mr. Negrete mentions the SEC offer of settlement does

11  not include a monetary payment.  I would point out in the

12  sentencing memo filed on behalf of Mr. Cowen, I should say,

13  Mr. Cowen's counsel argued the appropriate parties to pay

14  restitution to the SEC and/or the Lancer receiver.

15         I am fairly confident -- I can't speak on behalf of

16  the SEC -- I am fairly confident if Mr. Cowen offered to pay

17  the SEC some money, they would accept it.

18         MR. NEGRETE:  Actually -- if I may, Your Honor --

19  that's not necessarily the case.  Nobody has identified the

20  victims.  That's the problem.

21         As it relates to Mr. Cowen, the concept of the

22  creation of a fund is a good idea and an idea we welcome, but

23  each one is faced with who do you pay, and it's not as simple

24  as just giving it to the receiver because there could be a

25  burden to the victims in the receiver processing of such funds

Rundle - Direct

1    that are established.

2         We wouldn't wanted those funds to be consumed by

3    attorneys' fees in administering those funds.  The SEC doesn't

4    necessarily want to be involved with that, although we welcome

5    that.

6         We have a very good relationship with the SEC if such

7    fund is created.  I think the concept here is once we can

8    identify where we can place such a fund or how we could have it

9    administered, we're ready to do that.

10        Payment at this level just hasn't been discussed

11   because there is nobody to pay.  Nobody has come forward.

12   There was no response to the victim loss request.

13        So, we don't have Aunt Minnie in Palm Beach that has

14   her $100,000 waiting to get paid.  Nothing like that is

15   probably going to come forward as it relates to Mr. Cowen.

16        There is a good explanation to that, because most of

17   the investors, virtually all of them, looked to Mr. Lauer as

18   being the source of payment, or the various auditors.

19        Now, apart from Mr. Cowen's desire to do the right

20   thing and pay, as a practical matter, the receiver and the SEC

21   has to look upon certain corporate entities that were involved

22   with Mr. Lauer and that will ultimately be where the $1.36

23   billion or hundreds of millions of dollars of losses could be

24   recovered.

25        For that, Mr. Cowen is ready, willing and able to

1   assist.

2           THE COURT:  All right.  I'll hear from Mr. Cowen.

3           Thank you.

4           MR. ELLIS:  Your Honor, before Mr. Cowen comes up, one

5   last thing, if I may.

6           Mr. Hanusik was kind enough to refer to our Federal

7   Prison Guide Book which, incidentally, is a 2002 edition.  The

8   2005 will be out in September, and if the Court issues a

9   published opinion here, I would ask the Court note that it's a

10  pre-publication discount.  Anyway, all kidding aside.

11          Mr. Hanusik says his reading of the book indicates

12  there are about 10 or 15 facilities that offer medical care.

13  In point of fact, there are only five.  They are called Federal

14  Medical Centers.  They are at Rochester, Minnesota,

15  Springfield, Missouri, Lexington, Kentucky, Danvers,

16  Massachusetts and Butner, North Carolina.  All the facilities

17  have a physician's assistant on call whose unfortunate response

18  to many individuals is "Here is a Tylenol.  Get over it."

19          My final words of advice to any of my clients for

20  departing to a Federal prison is don't get sick.

21          Thank you.

22          MR. HANUSIK:  I would just point out, Your Honor, I

23  was just not referring to the five medical facilities that are,

24  basically, medical prison camps.  I was saying according to the

25  2002 edition of Mr. Ellis' book, there are 15 total BOP

1  facilities in the western region of the United States where,

2  presumably, Mr. Cowen would be sentenced within 500 miles of

3  his home and my review last night of those 15 facilities and

4  the write-ups -- it's sort of like a Fodor's Guide to Federal

5  Prisons -- and in each of them it lists what sort of healthcare

6  is available.  10 of them have in-patient care.  Many, at least

7  according to your book, have two or three physicians, not just

8  physicians' assistants on staff.  The other five have

9  out-patient care.

10          That was my only point.

11          THE COURT:  Thank you.

12          Mr. Cowen.

13          THE DEFENDANT:  First of all, Your Honor, I would like

14  to apologize to the Court.  I would like to apologize to anyone

15  that I have hurt, apologize to my family.  It was never my

16  intention to hurt anyone, but I know I have hurt people.  So,

17  I'm not shying away from that.

18          When I pled guilty, I made a deal with myself that I

19  was going to be the best cooperator ever, and I think I have,

20  and I have had some extraordinary compliments paid to me by the

21  FBI and also by the U.S. Attorney's Office because I didn't

22  want to be the simple cooperator.  I wanted to be able to help

23  more than anybody else could.

24          I know the Government has issued a letter.  I don't

25  want to go further into that, but that was my goal in life.  I

1    instructed my attorney when the SEC came forward, we offered to

2    cooperate.  At that time I wanted to cooperate.  We have been

3    trying to cooperate with the receiver and there have been some

4    obstacles of doing that, but with this proceeding over, I think

5    those obstacles will be behind.

6         I think in administering justice, which you are going

7    to do today, the only thing that I ask you is a couple of

8    things to consider.  One is to let me continue to cooperate.  I

9    think the victims would be benefited if I'm able to actively

10   participate with the Justice Department, with the SEC, because

11   there is still going to be more there, and with the receiver.

12   I think I would be most useful to them and most useful to the

13   victims.

14        The second part is that -- we haven't mentioned

15   this -- is that my parents are 90 and 80-years-old and in

16   severe declining health.

17        I have not told my parents.  This is based on a

18   discussion, an agreement with my brother and myself and with

19   medical doctors because of what it could do to them.  Everyone

20   else in my family knows and, in fact, my 85-year-old aunt, who

21   is my father's only living sibling, supports that and called

22   just this Sunday before knowing we were on our way here and

23   we're all very concerned about my parents and what effect it

24   will have on them.

25        My brother isn't here today and he wanted to be here

1    today but today is a strict Jewish holiday, Shavu'ot.  It

2    relates to Moses handing down the Ten Commandments towards the

3    Torah to Moses.  He wishes he was here, but he is here in my

4    spirit.

5         There are two types of justice I have to live with.

6    One that you're going to administer today, but also divine

7    justice, and I have been struggling with both and, you know,

8    God is forgiving and I have, you know, let's say cleaned up my

9    act both ways, and the only thing I would finally like to say

10   is, you know, I have the most wonderful wife and son.  I am

11   very concerned about, you know, the effect on Jacob.  Katherine

12   is a strong woman, but I am concerned with what my being away

13   would do to him, and I would just ask Your Honor to consider

14   those in rendering a sentence.

15        Thank you.

16        THE COURT:  Thank you.

17        MR. NEGRETE:  Your Honor, I think one thing that is

18   important to consider, I think we can all agree we're all here

19   because of the orchestration of one person and that person

20   isn't before the Court, and we don't know when he'll ever be

21   before the Court or if he'll be before the Court on any charge

22   or any civil remedy.

23        I think justice will best be served if Mr. Cowen is

24   allowed to cooperate with the Government and is readily

25   available for various civil, criminal actions that will result

1    in justice being served as to this one person.  The investors,

2    the Government all look to that one person stepping up to the

3    plate.

4         I think Mr. Cowen is the key person, the key vehicle

5    upon which justice can be served, and I urge the Court to

6    consider this and understand -- and I'm sure it does -- the

7    impact it will have both on the family and the various cases

8    against the Government if Mr. Cowen is confined.

9         Thank you, Your Honor.

10        THE COURT:  Thank you.

11        We'll take a five minute recess.

12        [There was a short recess at 9:47 a.m.]

13        THE COURT:  Please be seated.

14        Mr. Ellis, was there any other thing you thought of

15   that you wanted to say before --

16        MR. ELLIS:  No, Your Honor.  Thank you very much for

17   asking.

18        THE COURT:  I have given a great deal of thought to

19   what would be an appropriate sentence under our advisory

20   Guideline scheme, and taking into consideration all of those

21   factors which the defense has very ably briefed in the

22   sentencing memorandum under 18 U.S. Code § 3553, and unlike the

23   sentencing of the codefendant, Mr. Huard, I did not have a

24   sentence in mind before today's sentencing hearing.

25        I certainly had all of the issues that I am aware of

1   and have carefully considered and, so, let me go back to the

2   way I sort of summarized or paraphrased the defendant's

3   position in the sentencing memorandum, that is, that an

4   appropriate sentence here should be a sentence of probation

5   similar to that which Mr. Huard received, but increasing the

6   special conditions, and I suppose I go back to those

7   distinctions which Mr. Hanusik pointed out and articulated

8   today between Mr. Huard's involvement, Mr. Huard's plea and

9   what it is Mr. Cowen pled guilty to and what his involvement

10  was.

11          Again, Mr. Huard pled guilty to one thing and that was

12  the kickback scheme.  Mr. Cowen's plea of guilty was to two

13  things, to manipulation, as well as the undercover kickback

14  scheme, and I suppose that's why, in part, Mr. Huard, when he

15  scored out under the Sentencing Guidelines, scored out to a

16  level 23, a very different starting point from the starting

17  point of Mr. Cowen who started out, technically speaking, at 87

18  months by virtue of the favorable plea terms, he was then

19  capped out at 60 months.  But Mr. Cowen scored out to a level

20  29.

21          Mr. Huard had intended victims, but no actual victims.

22  There is a restitution hearing that will take place in this

23  case to address restitution to victims.

24          The Government filed motions for downward departure

25  for both defendants and in Mr. Huard case recommended a

1    sentence of 26 months, which I departed from by going downward

2    even more in light of special concerns that were raised by

3    Mr. Huard and other factors that I considered in that case.

4         The Government has come forward today and made a

5    request that I reduce Mr. Cowen's sentence down from 60 months

6    to 36, if I'm correct, based on the 40 percent reduction.

7         I have given careful thought and I did read through

8    the sentencing memorandum.  I was quite amazed to see color

9    copies of photographs and color copies of exhibits.  A great

10   deal of expense has gone into the defendant's presentation here

11   today, but looking beyond the form of the presentation, I

12   looked at the substance, and I am very much aware Mr. Cowen,

13   also similar to Mr. Huard, has family considerations, as do all

14   defendants who come before the Court for sentencing, and that

15   there will be a serious impact felt by his family members

16   resulting from his absence, and that he has very elderly

17   parents on the east coast with serious health concerns and

18   Mr. Cowen's own health issues.

19        Having looked at all of the factors under 3553, ever

20   mindful a sentence should be sufficient but not greater than

21   necessary to reflect the seriousness of the offense, to promote

22   the respect for the law and to provide just punishment for the

23   offense, and keeping in mind the sentence called for under the

24   advisory Guidelines, namely, a sentence of 60 months, I will

25   grant the Government's motion for downward departure.

1        It is the judgment of the Court that the defendant,

2   Bruce Cowen, be committed to the custody of the Bureau of

3   Prisons to be imprisoned for a term of 24 months as to Count I.

4   That sentence is an even greater departure from that which the

5   Government recommends based upon Mr. Cowen's substantial

6   assistance.

7        I reserve jurisdiction to enter an Order of

8   Restitution.  I have already indicated the date of the

9   restitution hearing.

10       I will address the matters pertaining to restitution

11  and the amount of payment following the restitution hearing in

12  August.

13       Upon release from imprisonment, the defendant will be

14  placed on supervised release for a term of three years as to

15  Count I.

16       Within 72 hours of release from the custody of the

17  Bureau of Prisons, the defendant will report in person to the

18  Probation Office in the district to which he is released.

19       While on supervised release, the defendant will not

20  commit any Federal, State or local crimes, he is prohibited

21  from possessing a firearm or other dangerous device and he may

22  not possess any controlled substances.

23       In addition, he will comply with the standard

24  conditions of supervised release that have been adopted by this

25  Court as well as with the following special conditions:  The

1    defendant will provide complete access to financial

2    information, which includes the disclosure of all business and

3    personal finances to the probation officer.

4          The defendant shall seek and maintain full-time

5    legitimate employment and not be unemployed for a term of more

6    than 30 days unless excused in writing by his probation

7    officer.

8          The defendant will provide documentation which

9    includes, but is not limited to, pay stubs, contractual

10   agreements, W-2 wage and earning statements and other documents

11   requested by his probation officer.

12         The defendant will not be engaged in any business that

13   offers securities, investments or business opportunities to the

14   public.  The defendant is also prohibited from engaging in

15   telemarketing, direct mail or national advertising campaigns

16   for business purposes without the written permission of his

17   probation officer.

18         The defendant will obtain prior written approval from

19   his probation officer before entering into any self-employment.

20   He will not own operate, act as a consultant, be employed in or

21   participate in any manner in any related concern, for example,

22   such as being an officer in any corporation working for any

23   security or commodity corporation, working for any

24   telemarketing company or mass-marketing entity or any business

25   that is involved in stocks or bonds during his period of

1    supervision without the advance approval of the Probation

2    Office.

3          Upon request of any appropriate regulatory agency, the

4    defendant will relinquish his license to the agency.  Such

5    relinquishment will be permanent and will be considered

6    disciplinary action.

7          It is also ordered the defendant pay immediately to

8    the United States a special assessment of $100.

9          I will allow the defendant to surrender on Friday,

10   August 5th following the conclusion of the restitution hearing.

11   You will surrender here downstairs in the Marshal's office.

12          Now that the sentence has been imposed, does the

13   defendant or his attorney object to the Court's findings or the

14   manner in which sentence was announced?

15          MR. ELLIS:  No, Your Honor.  But can I address the

16   Court on two issues, if I may?

17          THE COURT:  Certainly.

18          MR. ELLIS:  Number one, at this point, in light of the

19   fact that the Court has imposed a significant period of

20   incarceration, we would urge the Court to direct Probation to

21   delete paragraph 22 that deals with the telephone calls.  It's

22   accurate --  I have no problem with that -- but I would

23   respectfully submit its probative value is outweighed by the

24   prejudicial effect the Bureau of Prisons will use it for, which

25   is assigning Mr. Cowen a public safety factor and putting him

 1   in a low level security facility along with violent inmates.

 2           THE COURT:  Mr. Hanusik?

 3           MR. HANUSIK:  Your Honor, I have never been asked to

 4   delete something that's factually accurate from a presentence

 5   report.  It's an odd request to me.

 6           I have had numerous white collar cases involving wire

 7   fraud and use of the telephones where people have ended up in

 8   prison camps.  I really can't speak to what the Bureau of

 9   Prisons will do.  I will leave that to the Court's discretion.

10   It is factually accurate.

11           THE COURT:  I am uncomfortable requiring Probation to

12   delete that which is accurate in order to affect a defendant's

13   placement according to the Bureau of Prisons' regulations.

14           I will not do that.

15           MR. ELLIS:  The next issue, Your Honor, is regarding

16   the self-surrender.  I spoke to Mr. Hanusik about that.

17           Because Mr. Cowen may very well be needed to continue

18   his cooperation, he has indicated he would have no objection to

19   allowing him to self-surrender six months from today, and I

20   would ask the Court to allow him to self-surrender to the

21   institution designated by the Bureau of Prisons for the service

22   of his sentence six months from today.

23           MR. HANUSIK:  Your Honor, Mr. Ellis did ask me last

24   night if we would agree to having Mr. Cowen self-surrender at

25   the end of his cooperative activities.

1          I told Mr. Ellis at that point, really, that ongoing

2  matter is a matter being handled here in Miami by the U.S.

3  Attorney's Office, that I would need to speak to them, but I

4  would not be adverse to a six month extension pending

5  discussion of that.

6          It's really up to the Court.

7          THE COURT:  I'm not comfortable with that.  That's a

8  very long window of time.  In fact, I thought August 5th was a

9  pretty long window of time.  It's, basically, giving him two

10  months.  In two months there will be a designated facility and

11  the purposes of self-surrender will be accomplished.

12          If the Government needs Mr. Cowen to be out of custody

13  for an extended period of time beyond that, I will entertain a

14  motion filed to that effect, but I won't indicate a

15  self-surrender six months from now.

16          MR. ELLIS:  Two final items, Your Honor:  Rather than

17  require Mr. Cowen to self-surrender to the U.S. Marshal, I

18  would ask the Court to permit him to self-surrender to the

19  institution designated for the service of his sentence.  The

20  reason being this:  When you surrender to the U.S. Marshal, you

21  still get a credit as far as self-surrender, but he would

22  self-surrender to the U.S. Marshal in Miami and he would be put

23  to a circuitous travel route before he got to a facility in the

24  west coast.  Inmates refer to that as diesel therapy.  It can

25  take two, three, even four weeks.  It's a horrible experience,

1  a horrible experience, and if the Court would just delay his

2  self-surrender by two or three days, it would enable him to get

3  back to the west coast and self-surrender there.

4       THE COURT:  I will indicate his self-surrender is to

5  be Monday, August the 8th then.

6       MR. ELLIS:  Monday, August 8th?

7       THE COURT:  Correct.

8       MR. ELLIS:  Very good.

9       And, finally, I would ask the Court, is it the Court's

10  policy, upon request, to recommend -- I recognize

11  recommendations are merely recommendations.

12       THE COURT:  Yes, I do.

13       MR. ELLIS:  I would ask the Court to recommend the

14  Federal prison camp -- maybe lightning will strike here and he

15  won't go to a low -- the Federal prison camp at Sheridan,

16  Oregon, which happens to have the Bureau of Prisons RDAAP,

17  Residential Drug and Alcohol Abuse Program.  The alternative,

18  Lompoc, California.

19       THE COURT:  We'll include those recommendations.

20       MR. HANUSIK:  Your Honor, the only thing left open --

21  and I don't know if this is something you are holding for the

22  restitution hearing conclusion -- I don't think I heard

23  anything about a fine.

24       THE COURT:  Given what I anticipate will occur with

25  restitution, the amount, we're looking at $2 million or so.

1          MR. HANUSIK:  That is the --

2          THE COURT:  My greater concern is with payment of

3    restitution, rather than a fine.  So, I did not intend to

4    impose one.

5          MR. HANUSIK:  Thank you, Your Honor.  I just wanted to

6    make sure it wasn't something I missed.

7          MR. AARON:  Your Honor, during the recess I became

8    aware of the fact August 4th through 10th I will be in Chicago

9    at the ABA Annual Meeting for the House of Delegates.  I would

10   like to be excused from the August 5th meeting.

11         THE COURT:  Certainly.

12         You have a good day.  I will see you back in August.

13   [There was a short recess after which the following proceedings

14                    were had:]

15         MR. HANUSIK:  (Not present.)

16         THE COURT:  Mr. Ellis.

17         MR. ELLIS:  I forgot to ask the Court to recommend the

18   500 hour RDAAP program I recommended earlier at Sheridan.  The

19   Government advises it has no objection to the Court making that

20   relation.

21         THE PROBATION OFFICER:  The 500 Hour Drug Program.

22         THE COURT:  I don't recommend that when somebody is

23   serving a sentence this long.  It's two years.  I don't think

24   they'll have need for a drug program.

25         MR. ELLIS:  Actually, a sentence as little as 18

1    months would enable -- the program is a 9 month in-patient

2    program and six month out-patient program to be served at a

3    halfway house.  So there is enough time with a two-year

4    sentence for this.

5         As the Court is aware, as a result of this, Mr. Cowen

6    has developed an addiction to Xanax, which is a terrible

7    addiction.

8         THE COURT:  I won't include a recommendation for that.

9         THE PROBATION OFFICER:  Thank you.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2          I hereby certify that the foregoing is an accurate

3   transcription of proceedings in the above-entitled matter.

4

5   __03/12/11_____    _____
         DATE              BARBARA MEDINA, RPR, CP
6                          Official United States Court Reporter
                           301 North Miami Avenue, Suite 404
7                          Miami, FL  33128-7792  305/523-5518
                                         (Fax) 305/523-5519
8                                email:  barbmedina@aol.com
                                         barbmedina@yahoo.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

**Aaron** 2:2 4:8,8 51:7
**ABA** 4:17 51:9
**aberrant** 24:9,12
**ability** 35:14
**able** 5:25 14:11,14 37:25 39:22 40:9
**ably** 42:21
**above-entitled** 53:3
**absence** 29:24 44:16
**absent** 10:7
**absolutely** 34:19
**abuse** 11:14 50:17
**accept** 23:16 36:17
**acceptable** 28:9
**access** 46:1
**accomplished** 49:11
**accounting** 15:8
**accreditation** 36:4
**accurate** 10:9 47:22 48:4,10,12 53:2
**achieve** 10:12 33:12 35:11
**acquitted** 31:21
**act** 41:9 46:20
**action** 47:6
**actions** 41:25
**actively** 40:9
**activities** 48:25
**activity** 13:22
**actual** 27:16 43:21
**add** 25:23
**addiction** 52:6,7
**addition** 45:23
**additional** 14:2,3,4 23:18 32:16
**address** 1:23 5:6 19:8 21:25 22:8 23:5 30:24
  32:3 33:21 34:7 43:23 45:10 47:15
**addressed** 8:5 12:11 21:15 26:25
**addresses** 14:13
**addressing** 27:25
**adherence** 8:25
**adjustments** 24:4,7
**administer** 41:6
**administered** 37:9
**administering** 37:3 40:6
**administrative** 25:6 33:23
**adopted** 45:24
**advance** 47:1
**adverse** 49:4
**advertising** 46:15
**advice** 59:1
**advise** 18:7
**advises** 12:16 51:19
**advisory** 6:23 9:14,25 19:19 23:11 24:10 42:19
  44:24
**advocates** 9:4,6
**aelaw1@aol.com** 2:8
**affect** 30:2,3 33:9 48:12
**affidavit** 6:9
**age** 21:6
**agency** 47:3,4
**Agent** 31:1
**ago** 16:24 33:25
**agree** 15:18 41:18 48:24
**agreed** 24:5 27:3
**agreement** 24:3 35:5 40:18
**agreements** 46:10
**Alan** 2:6,7 4:12
**Alcohol** 50:17
**allow** 47:9 48:20
**allowed** 41:24
**allowing** 48:19
**allows** 15:21
**alternative** 50:17
**ALTONAGA** 1:10
**amazed** 44:8
**AMERICA** 1:4
**amount** 6:11 14:16,17 15:17 23:23 33:16 45:11
  50:25
**amounts** 34:19
**ample** 47:6
**analysis** 12:10
**anchor** 28:25 29:2
**and/or** 19:7 34:20 36:14
**announced** 47:14
**Annual** 51:9
**anticipate** 50:24
**anybody** 11:3 21:7,10 39:23
**Anyway** 38:10
**apart** 37:19
**apologize** 39:14,14,15
**Appeals** 17:15
**appearances** 1:13 4:5
**appellate** 9:7 10:4
**appendix** 18:23 27:12

**apply** 11:25
**appreciate** 33:4 34:6
**appropriate** 8:24 8:15 24:24 25:13 36:13 42:19
  43:4 47:3
**approval** 46:18 47:1
**April** 10:18,19
**argue** 17:1 21:11 22:22 24:7
**argued** 17:9 20:15 26:9 36:13
**arguing** 17:2 19:23 24:4
**argument** 8:12 20:13
**arguments** 19:21 31:15 34:21
**arrived** 19:3
**Arroyo** 2:4
**articles** 4:16
**articulated** 43:7
**ascertainable** 16:5
**aside** 18:14 38:10
**asked** 48:3
**asking** 42:17
**asks** 12:19
**assessment** 47:8
**assigned** 11:10
**assigning** 47:25
**assist** 5:24 6:2 35:14 38:1
**assistance** 6:24 45:6
**assistant** 38:17
**assistants** 39:8
**assisted** 6:6,15
**assure** 17:10 36:2
**assured** 14:7
**attorney** 14:10 15:25 40:1 47:13
**attorneys** 4:15 37:3
**Attorney's** 39:21 49:3
**auditors** 37:18
**August** 17:25 18:1,3,8,17 34:11,15 36:9 45:12
  47:10 49:8 50:5,6 51:8,10,12
**aunt** 37:13 40:20
**author** 4:16
**authority** 4:13 17:4
**available** 3:18 2 39:6 41:25
**Avenue** 1:16,22 53:6
**aware** 8:19 10:25 11:6 12:4,11 26:16 31:19
  42:25 44:12 51:8 52:5
**a.m** 42:12

**B**

**baby** 29:5,5
**bad** 18:6
**bar** 7:25 9:5
**BARBARA** 1:20 53:5
**Barbara's** 5:9
**barbmedina@aol.com** 1:23 53:8
**barbmedina@yahoo.com** 1:23 53:8
**based** 22:11 25:2 27:7 40:17 44:6 45:5
**bases** 24:11
**basically** 20:18 22:8 25:17 38:24 49:9
**basis** 5:11
**battle** 35:6
**Beach** 37:13
**bear** 9:17
**bed** 10:19
**behalf** 36:12,15
**behavior** 10:21,22 24:9,12
**belief** 30:6
**believe** 6:9 14:20 16:8 18:8 19:12 24:24 30:2
  31:3,10 35:5,9
**believed** 35:25
**believes** 6:22
**benchmark** 8:15
**benefit** 5:9 6:1 7:1 18:5 23:14 34:13
**benefited** 40:9
**better** 21:15
**beyond** 17:8 44:11 49:13
**big** 25:16
**Bill** 29:7
**billion** 37:23
**birth** 10:17
**bonds** 46:25
**book** 24:16 38:7,11,25 39:7
**Booker** 8:14,16
**BOP** 12:4 38:25
**bottom** 8:11
**bout** 29:4
**boy** 29:12
**break** 31:24
**brief** 28:7 33:6 34:2
**briefed** 33:6 42:21
**briefly** 14:24 26:1
**bring** 15:19
**brother** 7:25 40:18,25

**Bruce** 1:7 4:4 29:1,5,13 30:7,12 45:2
**Building** 1:21
**burden** 36:25
**Bureau** 10:24 11:2,22 45:2,17 47:24 48:8,13,21
  50:16
**Bureau's** 11:4
**business** 46:2,12,13,16,24
**Butner** 38:16

**C**

**C** 53:1,1
**CA** 2:5,8
**calculation** 7:2
**calendar** 18:5,13
**calendars** 17:21
**California** 4:18 8:8 29:6,7 50:18
**call** 18:11 28:11 31:1 38:17
**Calle** 2:4
**called** 11:2 27:6 31:22 38:13 40:21 44:23
**calls** 47:21
**camp** 11:4,6,7,12 50:14,15
**campaigns** 46:15
**camps** 12:5 38:24 48:8
**cancer** 29:4
**candidly** 20:12
**can't** 11:15 15:14 32:7 36:15 48:8
**cap** 19:14,24 20:2 22:17,24 23:15
**Capistrano** 2:5
**capped** 43:19
**care** 21:19 24:19,19 29:6,7 38:12 39:6,9
**career** 30:3
**careful** 44:7
**carefully** 43:1
**cares** 29:11
**Carlos** 2:3,4 4:10
**Carolina** 38:16
**Carrie** 2:12 28:11,12
**case** 1:3 5:17 6:3,20 7:16,19,20 8:21 9:14 10:8
  17:5,7 18:22 20:3,3,25 25:11 26:4,10 27:2,17
  27:18,19 31:23 32:6,8,9 33:4 35:21,22 36:19
  43:23,25 44:3
**cases** 9:15,24 10:4 27:15 31:20 32:5 35:15 42:7
  48:6
**Cassell** 8:21
**caught** 31:24
**cause** 12:3
**CECILIA** 1:10
**Centers** 38:14
**certain** 19:11 37:21
**certainly** 7:10 8:2 11:18 16:23 23:7 24:20 25:15
  26:2 27:10 28:10 33:3,14 42:25 47:17 51:11
**Certificate** 2:14
**certify** 53:2
**cetera** 10:13,13 15:9,9
**characteristics** 27:1
**charge** 41:21
**charitable** 27:11
**chart** 14:2
**Chicago** 51:8
**chicken** 35:2,6
**child** 11:7 29:12
**children** 30:4,6,10,13,15
**China** 17:22
**Circuit** 17:5,7 26:3,6
**circuitous** 49:23
**circumstances** 10:7,10 26:25
**citation** 3:1 9:22
**cite** 9:16
**cited** 7:20 9:15 21:12 26:5
**cites** 10:6
**civic** 27:11
**civil** 6:18 25:4 33:12,18 35:11 41:22,25
**cleaned** 41:8
**clear** 7:17 17:11 18:13 34:8 36:7
**clearly** 15:12 34:16
**CLERK** 18:3
**Clerk's** 14:15
**clients** 31:25 38:19
**closer** 5:9
**cnegrete1@hotmail.com** 2:5
**coast** 24:17 44:17 49:24 50:3
**Code** 42:22
**codefendant** 19:13 42:23
**collar** 12:8 48:6
**collateral** 22:12 24:8
**color** 44:8,9
**come** 5:17,18 6:13 7:21 8:9 22:12,20 28:1 33:17
  35:5 37:11,15 44:4,14
**comes** 9:11 12:10 25:20 38:4
**comfortable** 49:7
**Commandments** 41:2
**commentators** 26:21

55

Commission 21:4
Commission's 21:12
commit 21:8 45:20
committed 11:9 25:11 45:2
committing 11:13
commodity 46:23
commonly 31:22
community 11:8 21:16,22 27:2
company 46:24
comparison 23:4
compensation 34:24
complete 15:7 46:1
complex 32:22
compliments 39:20
comply 45:23
concept 36:21 37:7
concern 46:21 51:2
concerned 11:5 40:23 41:11,12
concerning 34:21
concerns 33:7 44:2,17
conclusion 35:8 47:10 50:22
conditions 20:5 35:24 43:6 45:24,25
conduct 24:1 25:2 33:24
conference 3:10 16:19 18:11
conferences 5:22
confident 35:10 36:15,16
confined 42:8
conflict 18:7
consequences 22:12 24:9
consider 20:4 25:21 26:24 40:8 41:13,18 42:6
consideration 9:2 27:8 42:20
considerations 44:13
considered 43:1 44:3 47:5
consist 24:8
conspiratorial 24:1
constantly 35:6
consultant 46:20
consumed 37:2
contact 13:20
CONTENTS 2:10
context 10:15,22
continue 35:10 40:8 48:17
continued 10:18
continuing 36:3
contractual 46:9
controlled 45:22
convenience 6:13
conviction 25:3
cooperate 35:23 40:2,2,3,8 41:24
cooperated 31:4
cooperation 5:14 6:17 25:14 30:25 31:2 33:15
  35:13,24 48:18
cooperative 48:25
cooperator 39:19,22
coordinated 13:22
copies 44:9,9
copy 11:16
corporate 35:19 37:21
corporation 46:22,23
correct 16:22 22:19 44:6 50:7
correctional 21:19
cost 13:18
counsel 2:2 4:9,10 7:4 19:3 36:13
Count 45:3,15
countless 35:16
country 6:8 9:7
couple 7:25 40:7
course 9:3,19 16:9 21:22 31:20
Courts 8:15,19
Court's 7:8 47:13 48:9 50:9
cover 31:11,18
Cowen 1:7 4:4,9,10 5:13,16,23 10:16,19 11:25
  19:19,24 20:4,14,15 21:2,7,11,14 22:9 23:9
  23:13,20 24:1,25,25 25:15,20 27:2 28:17,19
  28:21,23 29:17,24 31:2 32:7,12,17 34:3,10,12
  35:13,17,25 36:9,12,16,21 37:15,25 38:2,4
  39:2,12 41:23 42:4,8 43:9,17,19 44:12 45:2
  47:25 48:17,24 49:12,17 52:5
Cowen's 4:25 7:7 10:15,22 24:3,6 26:11 27:11
  33:6 36:13 37:19 43:12 44:5,18 45:5
CP 53:5
craft 33:19 36:3
create 35:2
created 9:6 37:7
creation 36:22
credit 23:7 25:15 34:19 36:9 49:21
credited 34:17
crime 11:13 21:8
crimes 11:9 25:10 45:20
criminal 1:15 4:15 6:5 10:8 41:25
crisises 29:14
cross 30:20

culpable 32:1
custody 45:2,16 49:12

D

dangerous 12:9 45:21
Danvers 38:15
data 5:21 21:4
date 12:15,20 15:18 16:2,17,20,23 17:21 34:11
  34:18 45:8 53:5
dates 18:6,12
daughters 30:9
day 12:24,25 18:4,14 24:6 28:2 51:12
days 12:14,19 13:10 14:17 15:19,25 16:3,10,16
  16:23 17:8,11,13 18:23 29:5 46:6 50:2
deal 17:4 32:24 39:18 42:18 44:10
dealing 29:19,22
deals 47:21
dealt 34:25
Debra 4:24
debriefings 5:20
December 10:18
decide 20:13
decided 9:8
decision 9:19
decisions 9:9,10
declining 40:16
defendant 2:1 21:18 22:4 27:1 39:13 45:1,13,17
  45:19 46:1,4,8,12,14,18 47:4,7,9,13
defendants 1:8 43:25 44:14
defendant's 5:4 19:12 21:14 28:12 34:8 43:2
  44:10 48:12
defense 7:4 9:5,6 42:21
defrauded 24:1 34:13
delay 50:1
Delegates 51:9
delete 16:14 47:21 48:4,12
demeanor 36:1
demonstrated 33:15
depart 27:7,9
departed 44:1
departing 38:20
Department 1:16 9:4 40:10
departure 5:4,7,12 6:22 7:21 24:11 25:13 26:5
  27:4,5 43:24 44:25 45:4
departures 26:15,16,18
deposition 35:16
DEPUTY 18:3
describe 31:1
described 27:11
description 2:19 28:7
Descriptions 3:11
designated 48:21 49:10,19
designed 11:1
desire 33:21 37:19
deter 21:1
determination 16:3
determine 22:21,23,25 23:1
determined 14:16
determining 26:23
deterrence 20:23,23 21:2 24:23
deterrent 24:24 25:2,10
developed 52:6
device 45:21
didn't 9:11 35:24 39:21
diesel 40:24
difference 23:11
different 6:16 14:6 23:23 25:17,21 43:16
difficulties 10:20
direct 2:13 15:4,20 28:13 46:15 47:20
disciplinary 47:6
disclosed 14:1,9
disclosure 16:21 46:2
discount 38:10
discouraged 27:6
discretion 15:6 48:9
discussed 37:10
discusses 10:14,23
discussing 16:20
discussion 32:10 40:18 49:5
disparate 20:7 31:19
disparity 25:16
disposal 6:1
dispute 11:21 22:14 23:2
distinctions 43:7
distracted 10:16
district 1:11 9:9 10:2,3 16:6 45:18
DISTRICTOF 1:1
disturbed 30:4
divine 41:6
Division 1:2,15
doctor 24:14
doctors 40:19

document 5:20
documentation 46:8
documents 46:10
doesn't 29:21 33:21 37:3
doing 21:1 40:4
dollars 37:23
don't 5:7 11:12,21 14:12 15:10 16:5,17 18:2,5
  18:10 19:9 21:7,10 22:14,18,22 24:14 25:4,15
  25:23 27:18 30:20 32:7 37:13 38:20 39:24
  41:20 50:21,22 51:22,23
door 23:7 25:18
double 20:5
doubt 6:10
downloads 5:21
downs 29:1
downstairs 47:11
downward 5:3,7,12 7:21 25:13 27:4,5 43:24
  44:1,25
Dr 21:20
draft 16:5,6
drama 30:8
drew 28:1
drug 50:17 51:21,24
due 29:5
D.C 1:17 6:13

E

E 53:1,1
earlier 23:6 51:18
early 17:25 18:1 30:12
earning 46:10
easier 8:9
east 44:17
Eastern 10:3
easy 32:23
economic 24:8,11
Edelman 9:5
Edelman's 8:24
edition 38:7,25
education 4:15 21:18
Edy 31:1
effect 8:18 29:25 31:6 40:23 41:11 47:24 49:14
effective 21:20,21 25:2,10
effort 30:15
efforts 5:25
egg 35:2,6
elderly 29:10 44:16
Ellis 2:6,7 4:12,13,18,21 7:5,11 8:3 9:24 11:24
  12:2 13:4,9,11 14:24 15:22 16:12,16 17:1,14
  17:19 18:20 19:22 20:6 22:9 24:16,23 26:1,3
  26:13,15 27:21 31:10,10,14 38:4,25 42:14,16
  47:15,18 48:15,23 49:1,16 50:6,8,13 51:16,17
  51:25
email 2:5,8 53:8
emotionally 30:4
employed 46:20
employment 46:5
enable 50:2 52:1
ended 48:7
enforcement 25:5
engaged 46:12
engaging 46:14
enter 15:12 34:18 45:7
entered 32:17 33:20
entering 46:19
entertain 49:13
entire 30:3
entities 37:21
entity 46:24
equity 17:4
erased 32:13
ESQ 2:2,3,6
essentially 20:6 35:19
established 37:1
estate 35:4
et 10:13,13 15:9,9
event 8:11
events 29:18
Evidence 2:18
exact 16:17
exactly 27:18
Examination 2:13 28:13
example 11:1 46:21
exceed 16:3 35:21
excuse 10:21 32:11,15 33:1
excused 46:6 51:10
exercise 15:5
exhibits 2:16,17 44:9
existing 6:17
expansive 23:9
expended 6:7
expense 44:10

experience 49:25 50:1
experiencing 10:20
explain 28:6
explained 34:2
explanation 37:16
expression 32:2
extended 49:13
extension 12:18 49:4
extensive 5:20 25:14
extent 15:7 34:15 36:8
extra 33:4,18,21
extraordinary 27:2 39:20
extremely 29:4
E-mail 1:23

**F**

F 2:3,4 53:1
face 27:4
faced 35:6 36:23
facilities 24:17,18 38:12,16,23 39:1,3
facility 12:3 24:21 48:1 49:10,23
facing 23:21,21 35:19
fact 6:25 16:18 17:20 19:19 20:18 22:11 25:8
   35:1 38:13 42:20 47:19 49:8 51:8
factor 10:24 11:3,11,17,22 47:25
factors 9:1,3 10:25 35:12 42:21 44:3,19
factually 48:4,10
Faerstein 21:20
fairly 36:15,16
fall 10:8
familiar 17:11 28:17 32:6
family 7:7 24:9,13 28:24,25 29:1,1,6,7,14,25
   30:2,9 39:15 40:20 42:7 44:13,15
far 19:16 35:21 49:21
fashioning 15:6
father 29:3,9 30:6,7,8
father's 40:21
favorable 43:18
Fax 53:7
FBI 31:1 39:21
February 12:15
Federal 1:21,21 11:6,7,12 24:16,21 25:5,9 38:6
   38:13,20 39:4 45:20 50:14,15
feel 17:2 29:24
feelings 28:7 34:5
feels 12:18
fees 37:3
felony 22:13
felt 44:15
fences 11:7
figure 21:12 27:21
filed 5:3 12:23 13:3 16:6,8,9 18:23 36:12 43:24
   49:14
final 16:2,7,8 38:19 49:16
finally 21:13 26:22 34:3 41:9 50:9
finances 46:3
financial 46:1
find 12:8
finding 14:12
findings 47:13
fine 50:23 51:3
firearm 45:21
first 5:1,16 8:12 11:19 20:10,10 23:6 25:18
   39:13
five 7:1 20:4 22:17 38:13,23 39:8 42:11
FL 1:22 53:7
FLORIDA 1:1,6
fly 6:8
focusing 22:5
Fodor's 39:4
follow 17:17
following 45:11,25 47:10 51:13
Footnote 10:23
foregoing 53:2
forget 32:21
forgiving 41:8
forgot 51:17
form 22:17 44:11
forth 5:11 15:17 25:24
forward 33:17,22 34:1 35:10 37:11,15 40:1 44:4
found 24:17 26:9
four 5:13 12:5 20:9 49:25
fourth 21:13,16
four-year-old 29:11
frankly 17:2 22:7 25:18
fraud 1:15 48:7
Friday 12:23 13:3 14:9 16:9,11,13,15 18:3 47:9
front 15:13
full 8:13
fully 35:22
full-time 46:4
fund 36:22 37:7,8

funds 6:8 36:25 37:2,3
further 24:4 39:25
future 25:1,8
F.3d 17:6 26:6

**G**

general 20:23 24:22
getting 23:20
give 8:20,22 14:14 17:20,24 28:6 34:4
given 9:2 22:17 27:25 28:3 42:18 44:7 50:24
giving 10:17 36:24 49:9
go 21:8 22:22 33:14,21 35:10 39:25 43:1,6
   50:15
goal 20:10,22 21:9,13,17 39:25
God 9:6 41:8
goes 20:8
going 11:4 17:1 21:8 23:14 24:7 28:1 30:24 31:1
   31:25 35:11,18,20 37:15 39:19 40:6,11 41:6
   44:1
good 4:1,2,8,20,21 18:4 19:4,22 22:7 27:24 29:8
   29:8,9 30:8,8,12,17,17 36:22 37:6,16 50:8
   51:12
Government 1:14 5:15,19,24 6:2,2,6,8,15 8:13
   9:13 10:6,14,23 12:12,17,25 13:7,13,18 14:13
   14:14,18 15:24 16:1 17:9,24 21:22 24:4 25:20
   26:9,9 30:20 32:4 33:12,17,22 35:7,13 39:24
   41:24 42:2,8 43:24 44:4 45:5 49:12 51:19
Government's 7:12,23 10:5 23:17 31:7 34:16
   36:8 44:25
grandchildren 37:23
grant 44:25
greater 32:23 42:18 44:9
greater 10:11,12 11:10,10 19:25 35:18 44:20
   45:4 51:2
ground 27:5,8,10
grounds 26:19 27:6
group 14:5,5,7 21:6
guess 5:13 32:3
guidance 26:19
Guide 38:7 39:4
Guideline 7:2,15,18,18 8:4 10:8 22:19 42:20
Guidelines 4:14 6:23 8:14,20,23 9:1,14,25
   19:20 23:12,12 24:5,10,11 26:17 43:15 44:24
guilty 5:16 22:13 25:3,17 32:17 39:18 43:9,11
   43:12
guy 30:17

**H**

half 27:15 32:12
halfway 52:3
handing 41:2
handled 49:2
Hanusik 1:15 4:2,6,6 5:1,2 7:3 8:1,3 11:19,21
   14:6 16:19,22 17:25 18:1,10,16 22:2 26:12,14
   27:13,14 30:21 31:6 32:3 34:7 36:4,7 38:6,11
   38:22 43:7 48:2,3,16,23 50:20 51:1,5,15
Hanusik's 21:24
happen 12:16
happened 13:14
happens 29:20,20 50:16
happy 19:7
hardship 24:8,12
hasn't 37:10
haven't 40:14
heading 14:6,8
health 20:18 21:15 22:11 24:13,14,20 33:6
   40:16 44:17,18
healthcare 19:5
hear 5:1,8 7:4 19:1,21 21:24 38:2
heard 50:22
hearing 5:1 12:18,25 17:7 18:15 34:11 42:24
   43:22 45:9,11 47:10 50:22
heart 31:23
held 17:8 26:3
help 39:22
helped 6:16
helpful 36:5
Henderson 11:22 12:2
he'll 41:20,21
higher 19:19
highlights 19:1
highs 12:6
history 27:1
hit 19:1
hold 17:11
holding 50:21
holiday 41:1
home 39:3
Hong's 27:19
Honor 4:2,6,8,24 5:2 7:12 9:17 13:6 14:21,24
   16:22 18:16,19,20 22:2,3,14 26:1,3,12 27:24

28:14 30:19,21,24 31:9,12 32:4,20 34:3,23
   36:18 38:4,22 39:13 41:13,17 42:9,16 47:15
   48:3,15,23 49:16 50:20 51:5,7
HONORABLE 1:10
hopefully 35:7
horrible 45:25 50:1
hour 51:18,21
hours 35:16 45:16
house 51:9 52:3
Huard 18:21 19:2,4,13,18,20 20:1,14,16,16,24
   23:3,6,7,8,21,21,23 25:16,17,19 26:8 27:15
   32:12,14 42:23 43:5,11,14,21,25 44:3,13
Huard's 19:23 23:13 26:10 43:8,8
Huerta-Rodriguez 3:7 10:1
hundreds 37:23
hurt 39:15,16,16
husband 29:3

**I**

idea 36:22,22
Identification 2:18
identified 12:22 13:17 14:3 36:19
identify 37:8
identity 12:13
immediate 23:14
immediately 18:8 47:7
impact 22:11 42:7 44:15
important 41:18
impose 19:15 51:4
imposed 26:24 47:12,19
imprisoned 45:3
incarcerated 12:3
incarceration 19:16 20:2 47:20
incidentally 43:18
incidents 29:17
include 15:3,7 36:11 50:19 52:8
included 5:20 19:16 32:11,13
includes 6:17 46:2,9
including 4:16
increasing 43:5
INDEX 2:16 3:1,10
indicate 7:7 49:14 50:4
indicated 16:4,14 19:2 35:22 45:8 48:18
indicates 7:20 8:3,13 12:21 15:25 20:8 36:4
   38:11
indicating 13:3 34:4
individual 12:14,22 13:16 14:12
individuals 38:18
inform 16:1
information 6:1 12:13 13:25 15:5,13,21 35:14
   46:2
informative 24:16
informed 13:19 18:20,21
informing 8:15
injunction 24:25 25:6,7,8
inmates 48:1 49:24
insights 5:25
insofar 20:19 33:16
institution 48:21 49:19
instructed 40:1
intend 51:3
intended 23:24 26:10 27:14,16,19 43:21
intends 31:16
intention 39:16
interested 23:4
interviews 35:17
intimately 32:6
introduce 4:11
investigation 6:4,5,17,18,19,19 13:4 35:20
investments 46:13
investors 23:25 34:14 37:17 42:1
involved 23:10 37:4,21 46:25
involvement 43:8,9
involving 48:6
in-patient 14:19 39:6 52:1
Irwin 2:7
isn't 40:25 41:20
issue 8:20 9:8,10,10 10:4 12:12 22:6 23:2,3
   24:22 30:25 48:15
issued 39:24
issues 12:11 19:11 22:6 24:13,20 38:8 42:25
   44:18 47:16
items 49:16
it's 6:19 7:14,16 8:5,9 11:15,22 16:7,7 20:6 23:1
   25:8,19 27:10 31:14 36:23 38:9 39:4 47:21
   48:5 49:6,9,25 51:23
I'd 23:4
I'll 7:4 9:16 38:2
I'm 13:2,11 17:1,4 18:2 24:14 26:8 35:10 39:17
   40:9 42:6 44:6 49:7

## J

Jacob 41:11
jail 32:1
Jewish 41:1
job 32:24
Juan 2:5
Judge 1:11 6:22 8:21,21,24 9:3,4
judgment 45:1
July 10:17 17:23 18:2
JUNE 1:7
jurisdiction 45:7
jurisdictional 17:12
juror 31:22
jury 32:5
justice 1:16,21 9:4 40:6,10 41:5,7,23 42:1,5

## K

Katherine 41:11
Katherine's 29:3 30:13
keeping 19:21 44:23
Kelly 6:3 31:20,24 32:9,11,14
Kentucky 38:15
key 35:12,19 42:4,4
kickback 23:9,10 43:12,13
kidding 38:10
kind 38:6
knew 30:16
know 12:24 15:10 16:6,18 17:2,2 18:10,15 19:2
24:14 25:4 28:5 30:20 39:16,24 41:7,8,10,11
41:20 50:21
knowing 40:22
known 11:10 28:21
knows 19:5 22:3 31:23 40:20

## L

lack 26:18
Lancer 23:25 34:20 36:14
language 8:17
Lauer 37:17,22
law 2:4,7 4:15 13:7 17:5,5,16,16,17 44:22
laws 25:1,9
lawyer 19:4 24:6 31:15
lawyers 9:7
learned 7:25 30:12,16
leave 48:9
lecturer 4:14
left 50:20
legally 22:22
legitimate 46:5
lend 5:25
length 5:14
letter 39:24
letters 13:19
let's 41:8
level 12:3,6,6 25:14,17 31:1 37:10 43:16,19 48:1
levels 12:5
Lexington 38:15
license 47:4
life 10:15 29:13 39:25
life-threatening 29:4
light 19:18 44:2 47:18
lightly 33:8
lightning 50:14
likelihood 21:5
limited 46:9
line 2:19,19 8:10
lines 8:11
link 33:16
list 13:14,16 14:14
lists 39:5
Litigating 4:17
little 17:2 29:12 51:25
live 11:5
living 40:21
local 2:2 4:9 8:8 45:20
logical 29:20,21
Lompoc 50:18
long 28:21 33:25 49:8,9 51:23
look 24:10,15 37:21 42:2
looked 37:17 44:12,19
looking 23:13,13,19 35:3 44:11 50:25
loss 23:23,24,24,25 26:9,10 27:14,16,16,19
35:21 37:12
losses 15:8 16:3,5 37:23
lot 32:10
love 29:10 30:12,16
low 12:3 48:1 50:15
lower 7:18 25:17
lowest 21:6
lows 12:5,8
luck 18:6

## M

M 1:10
mail 46:15
maintain 46:4
major 12:12
majority 22:4
making 51:19
malfunction 32:13
man 29:8 30:17
mandated 25:6
mandatory 23:12 24:10
manipulation 23:10 32:17 43:13
manner 21:20,21 46:21 47:14
Marked 2:17
marriage 30:13
Marshal 49:17,20,22
Marshal's 47:11
Massachusetts 38:16
mass-marketing 46:24
matter 4:4 6:4 37:20 49:2,2 53:3
matters 45:10
Maung 3:8 17:6
maximum 7:17,19
mean 30:14
mechanism 25:5
medical 21:19 38:12,14,23,24 40:19
MEDINA 1:20 53:5
Medinah 27:18
mediums 12:6
meet 6:8
meeting 21:14 51:9,10
meetings 5:19 6:12
meets 21:9,13
member 28:25
members 7:7 44:15
memo 5:5 7:24 20:8 22:3 34:9 36:12
memorandum 7:15 10:5 12:11 18:23 19:2,12
26:6 27:12 42:22 43:3 44:8
mention 6:20 26:22
mentioned 9:20 23:6 40:14
mentions 36:10
merely 50:11
met 14:19,19,21
Miami 1:2,6,22,22 6:13 49:2,22 53:6,7
mike 5:10
mile 33:4,18,21
miles 39:2
million 23:24 26:10 27:14,17,21 50:25
millions 37:23
mind 19:6,10,21 42:24 44:23
mindful 17:17 33:5 44:20
minimum 12:4
minimums 12:5
Minnesota 38:14
Minnie 37:13
minute 23:5 42:11
missed 51:6
Missouri 38:15
misspeak 13:11
misspoke 27:15
mistaken 26:8,12,13
misunderstood 14:2,4
model 29:12 30:10
molest 11:7
moment 9:17
Monday 50:5,6
monetary 34:24 36:11
money 34:12 36:8,17
month 22:24 23:15 49:4 52:1,2
months 7:2,16,19,21 22:23 23:1,13,14,18,20,22
25:21,21,22 26:4 43:18,19 44:1,5,24 45:3
48:19,22 49:10,10,15 52:1
morning 4:1,2,8,20,21 27:24
Moses 41:2,3
mother 30:7,7
mother-in-law 28:20
motion 5:3,6,11 7:13,13 31:6,7 44:25 49:14
motions 43:24
move 5:9

## N

names 14:13
national 46:15
nationally 4:13
nature 26:24
near 17:23
Nebraska 10:2
necessarily 36:19 37:4
necessary 10:11,12 20:14 31:3 44:21
need 12:21 18:15 30:6 33:21 49:3 51:24
needed 21:18 48:17

needs 21:14 49:12
neglected 26:22
negotiations 35:5,8 36:2
Negrete 2:3,4,13 4:10 8:7 16:18 17:22 18:5,10
18:17,19 27:24 28:11,14,16 30:18,24 31:9
32:19,20 33:1,3 34:23 36:10,18 41:17
neighboring 11:8
neither 12:20
never 39:15 48:3
new 1:16 6:22
night 24:16 39:3 48:24
North 1:22 38:16 53:6
Northern 29:7
note 38:9
notices 14:19
notified 13:17 14:1
notify 13:8,13
notifying 13:19
notwithstanding 19:18
number 6:12 47:18
numbered 8:9
numerous 5:22 6:9 48:6

## O

object 47:13
objection 48:18 51:19
observed 5:12
obstacles 40:4,5
obtain 15:3 46:18
obviously 5:12 32:1,4 33:20
occasions 5:13 6:9
occur 50:24
occurred 10:17
odd 48:5
Offender 11:2
offenders 12:8
offense 10:14,17 11:3 25:3,18 26:25 44:21,23
offer 30:25 36:10 38:12
offered 36:16 40:1
offers 46:13
office 2:7 4:19 14:15 39:21 45:18 47:2,11 49:3
officer 4:24 12:21 13:6,10,12,25 14:23 15:3 16:1
46:3,7,11,17,19,22 51:21 52:9
Offices 2:4
Official 1:21 53:6
okay 17:19 18:9
old 31:14
once 13:17 14:6 37:7
ongoing 6:3,3,5,17 35:4,9 49:1
onward 10:19
open 19:21 50:20
operate 46:20
operation 32:16
opinion 38:9
opportunities 46:13
opportunity 4:11 7:7 34:10
oppose 19:15,24
opposed 8:10 12:4 26:10
orchestration 41:19
order 15:2,6,12,16,23 22:8 33:23,24 34:17 36:3
45:7 48:12
ordered 47:7
Orders 15:1
Oregon 50:16
original 7:2 12:15 14:1
outside 12:24 14:4 16:9
outweighed 47:23
out-patient 24:19 39:9 52:2
owed 12:14 15:9,17

## P

page 2:11,19,19 3:2,11 7:15,20 8:3,6,10,13 9:13
9:21 10:6,14,23 20:8 21:17 22:24 26:5 27:11
paid 15:16 34:12 36:8 37:14 39:20
Palm 37:13
paper 8:9
paragraph 8:13 10:6 47:21
parallel 6:18,19
paraphrased 43:2
paraphrasing 19:17
parenthetically 8:6
parents 29:11 30:6 40:15,17,23 44:17
part 5:14 29:23 30:16 40:14 43:14
participate 40:10 46:21
participated 6:6 24:2
particular 26:23
particularly 19:17,17
parties 36:13
passionate 28:3,4
Patricia 17:21
pay 15:14 36:13,16,23 37:11,20 46:9 47:7

payment 36:11 37:10,18 45:11 51:2
payments 34:17
pays 34:20
pending 49:4
penitentiary 12:7
Pennsylvania 4:18
people 11:9 21:5 28:5 29:22 30:14 32:1 39:16
    48:7
percent 6:21 19:25 21:6,12 22:20,25 23:17
    25:13 31:7 44:6
period 12:24 19:16 46:25 47:19 49:13
permanent 47:5
permission 7:8 46:16
permit 49:18
permitted 27:7
person 5:16,17 13:15,21,21,22 23:6 28:3 29:8
    41:19,19 42:1,2,4 45:17
personal 46:3
personally 33:11
pertaining 45:10
Phelps 3:5 10:3
photographs 44:9
physicians 39:7,8
physician's 38:17
picking 18:6
place 12:9 37:8 43:22
placed 45:14
placement 48:13
places 19:14
placing 20:24
Plaintiff 1:5
plate 42:3
plea 7:1 23:9 24:3 32:17 33:20,20 43:8,12,18
plead 5:16
pleading 22:13
pleadings 8:8
please 4:3 7:5 9:18 28:15 42:13
pled 23:8 25:3,17 39:18 43:9,11
point 5:6 7:14 9:5,21 10:15 17:1,15 20:15,19
    21:3 22:15 23:8 24:23 26:4 31:10 32:14 34:23
    36:11 38:13,22 39:10 43:16,17 47:18 49:1
pointed 7:11 20:1 21:20 43:7
points 7:25 21:25 22:8
policy 26:16 50:10
portions 16:15
position 13:1 19:13 34:4,16 36:8 43:3
possess 45:22
possessing 45:21
possible 30:7
Post-Booker 4:17
potential 20:3
practicable 15:7
practical 37:20
precludes 11:3
preferable 18:1
pregnancy 10:20
prejudicial 47:24
prepare 15:20
prepared 5:24 16:11 32:23
prerequisite 17:12
present 4:10 34:5 51:15
presentation 44:10,11
presentence 13:4 15:3 16:21 48:4
presided 31:20
presumably 39:2
pretrial 5:18
pretty 12:9 18:13 27:19 32:10 35:10 49:9
previous 30:13
pre-publication 38:10
Price 31:20,24 32:6,8
prior 12:14,19 15:25 18:24 46:18
prison 11:6,7,12 24:21 38:7,20,24 48:8 50:14,15
    48:9,13,21 50:16
proactive 33:11 35:15
probably 17:2 46:18
probation 4:23,24 12:16,17,21 13:6,7,8,10,12
    13:13,14,17,19,20,25 14:20,23 15:3,20,24
    16:1,4 20:4,25 21:9,13 22:10 24:24 43:4
    45:18 46:3,6,11,17,19 47:1,20 48:11 51:21
    52:9
probative 47:23
problem 11:11 15:23 31:25 36:20 47:22
problems 21:15
procedurally 12:12
proceed 14:11,18 28:14
proceeding 40:4
proceedings 11:10 51:13 53:3
processing 36:25
program 50:17 51:18,21,24 52:1,2,2
programs 4:15
prohibited 26:18 45:20 46:14

promote 44:21
prong 13:23
proof 30:25
proposed 19:25
prosecutions 6:3
prosecutor 6:14
prosecutors 9:6
protect 11:1,15
protecting 21:10
provide 6:1 12:13 13:14 14:14 20:20 21:17,18
    44:22 46:1,8
provides 6:23 14:3 31:2
provides 7:1 15:1
providing 35:16
PSI 12:21 14:1,9 16:5,6,11 27:22
public 6:4 10:24,25 11:1,2,11,16,17,22 21:10,11
    27:3 46:14 47:25
published 38:9
punished 20:16,20,21 22:10
punishment 20:14,20 44:22
punitive 19:17
purpose 20:10,19
purposes 10:13 20:9 46:16 49:11
put 10:19,22 17:21 49:22
putting 47:25
P-h-e-l-p-s 10:3

Q

quarrel 7:13 11:8
question 21:7
questions 19:7 21:23 30:19,21
quibble 22:18
quite 11:4 44:8

R

R 53:1
Rafael 2:8
raised 19:11 22:9 44:2
range 7:15,18,19,22 8:4 10:8 22:19,21
Ranum 3:3 8:24 9:5,19 10:9
rationale 11:4
RDAAP 50:16 51:18
reach 35:8
read 44:7
readily 41:24
reading 18:21 38:11
reads 18:22
ready 5:25 14:18 37:9,25
real 23:24,25 31:24 36:7
realize 6:18
really 6:4 11:14,15 22:5 23:2,11 26:17 32:7 48:8
    49:1,6
reason 6:10 22:7,7 30:11 49:20
reasonable 6:23 9:14 22:21,23 23:1
reasons 20:7
recall 10:18
recalls 32:10
received 2:17 7:23 8:16 16:13,17 19:18 22:3
    43:5
receiver 15:15 33:13 34:13,20 35:1,7,12,18
    36:14,24,25 37:20 40:3,11
receivership 13:15
receives 33:10
recess 42:11,12 51:7,13
recidivism 21:5
recognize 10:17 50:10
recognized 4:13 26:21
recommend 50:10,13 51:17,22
recommendation 22:16 23:17 25:13 52:8
recommendations 50:11,11,19
recommended 6:21 43:25 51:18
recommending 25:20
recommends 45:5
record 4:5 5:23 6:4
recovered 37:24
recovered 44:5
reduction 22:16,16 31:8 44:6
refer 38:6 49:24
reference 13:6 33:23
referring 38:23
reflect 44:21
reflection 6:24,25
reflects 25:14
regarding 48:15
regime 6:23
region 24:18 39:1
regulations 48:11
regulatory 47:3
related 46:21
relates 36:21 37:15 41:2
relation 51:20

relationship 28:19,23 37:6
release 45:13,14,16,19,24
released 45:18
relevant 47:4
relinquishment 47:5
remainder 8:14
remains 10:6
remedies 35:20,22
remedy 34:24 41:22
remember 27:18
remembers 18:10
rendering 41:14
reoffend 21:3
reply 25:24
report 12:23 13:2,4 15:4,4,6,20 16:21 21:12,21
    32:22 45:17 48:5
REPORTED 1:19
Reporter 1:21 53:6
Reporter's 2:14
representative 35:4
request 12:25 31:8 37:12 44:5 47:3 48:5 50:10
requested 46:11
require 9:21 20:25 49:17
required 12:13,19
requirements 14:20
requiring 48:11
reread 8:16,16
researched 9:10
reserve 45:7
Residential 50:17
resolutions 33:12
respect 11:14 16:20 20:22 21:2 23:3,19 24:22
    25:10 26:8,15 28:7 29:17 31:19 32:9 44:22
respectfully 47:23
respects 32:4
respond 5:7 7:24 14:24 26:1
responding 7:12 22:5
response 5:4 21:24 34:8 37:12 38:17
responsibilities 24:9,13
rest 10:19 25:23
restitution 12:10,18 13:21 14:12 15:2,6,8,12,14
    17:6,7,20 18:15 22:6 27:25 33:14,16,19 34:11
    34:17,21 36:14 43:22,23 45:8,9,10,11 47:10
    50:22,25 51:3
restriction 33:25
result 6:21 24:1 41:25 52:5
resulting 8:4 44:16
results 32:15
retribution 20:11
review 5:20 39:3
revised 14:9 16:14
right 13:9 17:21 27:23 29:23 32:2 33:17,19 34:1
    35:25 36:6 37:19 38:2
Robinson 19:3
Rochester 38:14
Rodriguez 3:4,6 7:20 26:6
role 29:12 30:9
Room 1:16
route 49:23
Routinely 16:7
RPR 53:5
RPR-CP 1:20
rules 8:8
Rundle 2:12 28:11,12,17 29:14 30:22

S

sad 29:13
safety 10:24,25 11:3,11,17,22 47:25
San 2:5,8
satisfied 13:23 14:20
savings 21:22
saw 6:9
saying 8:10 20:20 22:20 32:4 38:24
says 7:17 8:22,25 10:9 11:22 19:4 21:16 26:23
    38:11
scheme 23:9,10 42:20 43:12,14
school 8:22,24,24 9:3,4
scored 19:19 43:15,15,19
scot-free 31:21
se 9:14,25
seated 4:3 42:13
SEC 6:18 15:15 24:25 25:4 33:13 34:13,20
    35:12,15,17 36:10,14,16,17 37:3,6,20 40:1,10
second 5:17 10:6 20:22 40:14
section 1:15 8:12 11:24
securities 25:9 46:13
security 12:3 25:1 46:23 48:1
SEC's 34:24
see 9:11 11:17 44:8 51:12
seeing 9:9
seek 27:3 46:4
seeking 34:24

**seen** 11:20 15:10,11
**self-employment** 46:19
**self-surrender** 48:16,19,20,24 49:11,15,17,18
    49:21,22 50:2,3,4
**sending** 13:18
**sense** 20:2
**sentence** 6:23 7:17,19 9:13,25 10:7,11 19:3,6,9
    19:13,14,15,18,24,25 20:3,24,25 21:9,13
    26:24 33:10 41:14 42:19,24 43:4,4 44:1,5,20
    44:23,24,45 4:47:12,14 48:22 49:19 51:23,25
    52:4
**sentenced** 39:2
**sentences** 32:15
**sentencing** 1:10 4:14,14,25 5:4 7:15,23 10:5,13
    12:11,15,20 15:25 16:4,20,23 17:4 18:12,23
    18:24 19:1,12 20:4,8,9,10,11,22 21:4,10,14
    21:17 22:3 25:24 26:5 27:12 28:8 34:9 36:12
    42:22,23,24 43:3,15 44:8,14
**separate** 5:13 15:4,20 27:15
**September** 38:8
**serious** 11:14 21:15 29:3 33:8 44:15,17
**seriously** 21:7
**seriousness** 44:21
**served** 24:15,20 41:23 42:1,5 52:2
**service** 27:3 48:21 49:19
**serving** 51:23
**set** 13:15 16:2 18:14 25:24 34:11
**sets** 5:11
**settlement** 35:11 36:10
**severe** 40:16
**severely** 30:4
**severity** 11:10,11
**sex** 11:2,3
**share** 11:19
**Shavu'ot** 41:1
**Sheridan** 50:15 51:18
**short** 28:1 42:12 51:13
**shown** 5:24,24
**shows** 21:5
**shut** 19:5
**shying** 39:17
**sibling** 40:21
**sick** 38:20
**side** 9:11 33:13,18 35:3
**SIDE-BAR** 3:10
**significant** 6:12 22:15 32:12 47:19
**significantly** 20:17,21
**similar** 43:5 44:13
**Similarly** 11:9
**simple** 36:23 39:22
**simply** 8:17 10:16 15:14
**sincere** 30:15
**sit** 19:5
**situation** 25:7 34:1 35:1,3
**six** 48:19,22 49:4,15 52:2
**slid** 32:2
**solution** 29:21,23
**somebody** 11:5,12,16 51:22
**son** 29:9,10 30:3 41:10
**sorry** 13:2,11
**sort** 22:8,12 34:10 35:8 39:4,5 43:2
**source** 37:18
**Southern** 1:1 29:6
**speak** 32:7 36:15 48:8 49:3
**speaking** 14:10 43:17
**Speas** 4:24 13:24 14:22 16:14 32:22
**special** 20:5 43:6 44:2 45:25 47:8
**specific** 21:2
**specify** 15:16
**spent** 6:10 22:4 32:23
**spirit** 41:4
**split** 8:19
**spoke** 13:21 14:6 48:16
**spoken** 20:24
**Springfield** 38:15
**staff** 39:8
**stand** 7:9
**standard** 5:21 45:23
**starred** 11:24
**start** 23:16
**started** 10:20 43:17
**starting** 7:6 18:18 25:21 26:4 43:16,16
**State** 45:20
**statement** 34:4
**statements** 26:16 46:10
**states** 1:4,11,16 3:7,8 4:4,7 9:13 10:1 12:2 13:7
    17:6 22:15,20 24:18 25:12 39:1 47:8 53:6
**STATESDISTRICT** 1:1
**status** 36:6
**statute** 13:23 14:19
**Ste** 1:21,22
**step** 12:17

**stepfather** 30:11
**stepping** 42:2
**stocks** 46:25
**stops** 24:3
**story** 31:14
**straight** 27:4
**strange** 17:2
**straw** 28:1
**Street** 2:7
**strict** 41:1
**strike** 50:14
**strong** 28:25 41:12
**strongest** 20:13
**struggling** 41:7
**stubs** 46:9
**study** 21:6
**submit** 10:10 47:23
**substance** 44:12
**substances** 45:22
**substantial** 8:23 45:5
**substantially** 6:2,6,15 31:4
**sub-group** 14:8
**sufficient** 10:11,12 15:5 44:20
**suggested** 18:12 19:23
**suggesting** 22:18
**Suite** 53:6
**summarized** 43:2
**Sunday** 40:22
**supervised** 45:14,19,24
**supervision** 47:1
**Supp** 10:2,3
**support** 9:15
**supports** 40:21
**suppose** 43:6,14
**Supreme** 26:20 31:15
**sure** 6:11 18:23 27:19 29:16 31:18 33:9 42:6
    51:6
**surrender** 47:9,11 49:20
**SWORN** 28:12

---

**T**

**T** 53:1,1
**TABLE** 2:10
**take** 4:11 7:6 23:17 24:15 25:19 42:11 43:22
    49:25
**taken** 9:1 33:8
**talked** 22:9
**talking** 8:7 20:23 22:25
**talks** 20:10
**tape** 32:12
**tapes** 32:11
**target** 35:19
**targets** 35:18
**task** 27:25 28:4 32:23 35:18
**teaching** 30:4
**technicalities** 17:3
**technically** 43:17
**telemarketing** 46:15,24
**telephone** 5:22 11:14 16:19 18:11 47:21
**telephones** 48:7
**tell** 30:14,15
**Ten** 4:10
**tend** 18:6
**Tennessee** 10:4
**tentative** 19:3,6,9
**term** 45:3,14 46:5
**terms** 23:19 24:20 43:18
**terrible** 52:6
**test** 10:10
**testified** 5:14
**testify** 6:7 28:6
**testifying** 6:16
**testimony** 28:4 35:14,16
**thank** 4:6 5:2 7:3,11 12:1 13:24 14:22,23 18:16
    18:19 22:1,2 25:25 30:18,22,23 31:9 32:18,20
    32:21,22 34:22 38:3,21 39:11 41:15,16 42:9
    42:10,16 51:5 52:9
**that's** 6:18,24 7:16 9:6 12:24 14:10 16:22,22
    23:20 26:5 28:1 31:5 36:19,20 43:14 48:4
    49:7
**therapy** 49:24
**they'll** 51:24
**thing** 7:14 20:11 21:1 24:14 33:17,19 34:1,7
    35:25 37:20 38:5 40:7 41:9,17 42:14 43:11
    50:20
**things** 26:18 40:8 43:13
**think** 5:11 6:19,24 8:1 18:2,11,13 19:11 20:23
    21:7,10,24 22:22,24,25 23:3 24:19 25:12,14
    25:15,16,23 26:9,20,20,25 27:4 28:1 31:5
    32:7,9,24 33:3,9 34:3,7 37:7 39:19 40:4,6,9
    40:12 41:17,18,23 42:4 50:22 51:23
**third** 21:9

**THOMAS** 1:15
**thorough** 32:24
**thoroughly** 33:6
**thought** 6:22,25 42:14,18 44:7 49:8
**threat** 21:11
**three** 8:11 31:14 39:7 45:14 49:25 50:2
**Thursday** 22:4
**tied** 36:3
**time** 8:17 10:16 12:18,23 17:22,24 18:15,17
    19:8 22:5 23:19 25:19 29:23 32:24 40:2 49:8
    49:9,13 52:3
**timely** 5:18
**title** 15:2
**today** 7:8 14:11,17 15:13 28:5 33:24 40:7,25
    41:1,1,6,4 3 44:4,11 48:19,22
**today's** 16:20 42:24
**told** 24:6 40:17 49:1
**Tom** 4:6
**top** 22:16
**Torah** 41:3
**total** 38:25
**training** 21:19
**transcript** 1:10 18:21
**transcription** 53:3
**traumatized** 30:5
**travel** 49:23
**treat** 21:21
**treatment** 21:19
**trials** 5:14 6:16
**trigger** 15:23
**true** 10:7 22:14
**truly** 34:5
**trying** 33:12,19 40:3
**two** 5:13 6:16 9:24 12:11 27:15 29:5 39:7 41:5
    43:12 47:16 49:9,10,16,25 50:2 51:23
**two-year** 52:3
**Tylenol** 38:18
**type** 33:10
**types** 41:5

---

**U**

**ultimately** 37:22
**uncle** 30:8
**uncomfortable** 48:11
**undercover** 3:8,10 32:16 43:13
**understand** 25:4 42:6
**understandable** 11:5
**understanding** 34:12
**understood** 31:5
**unemployed** 46:5
**unfortunate** 38:17
**unique** 35:1,14
**United** 1:1,4,11,16 3:7,8 4:4,7 10:1 17:6 22:15
    22:19 24:18 25:12 39:1 47:8 53:6
**unreasonable** 10:1
**unusual** 10:7,10
**upholds** 8:14
**ups** 29:1
**urge** 42:5 47:20
**use** 10:9 47:24 48:7
**useful** 26:19 40:12,12
**USSG** 7:17
**U.S** 3:5,6 10:2 26:6 39:21 42:22 49:2,17,20,22
**U.S.C** 15:1 20:9 21:16 26:22

---

**V**

**value** 24:24 47:23
**variance** 26:19 27:10
**variances** 24:7,8 26:15,17
**various** 37:18 41:25 42:7
**vehicle** 42:4
**verdict** 32:5
**version** 16:7,8
**versus** 3:5,6,7,8 4:4 7:1 10:1,2 17:6 25:21 26:6
**victim** 15:8 37:12
**victims** 12:14,22 13:14,16,19 14:2,4,5 15:17
    16:3 36:20,25 40:9,13 43:21,21,23
**view** 9:5
**violated** 33:24
**violations** 25:1,9
**violent** 11:9,13 48:1
**virtually** 37:17
**virtue** 23:25 43:18
**vocational** 21:18
**voluntarily** 33:18,22
**vs** 1:6

---

**W**

**wage** 46:10
**waiting** 37:14
**walk** 11:5,12

walks 11:16
want 11:12,19 17:15 35:22 37:4 39:22,25
wanted 10:15 31:11 35:2 37:2 39:22 40:2,25
   42:15 51:5
wants 18:25
warranted 6:20
Washington 1:17 6:13 13:21,22
wasn't 32:23 51:6
way 19:14 29:19,21 35:9 40:22 43:2
ways 41:9
weekend 22:5
weeks 49:25
weight 8:20,23 9:2
welcome 4:22 30:23 36:22 37:4
welcomes 34:5
went 31:21 33:3,22
west 24:17 49:24 50:3
western 24:17 39:1
we'll 17:10 18:14 21:24 35:5,8 42:11 50:19
we're 4:25 9:9 20:23 22:24,25 35:11 37:9 40:23
   41:18 50:25
whatsoever 8:18
what's 11:2,10 27:5
white 12:8 48:6
wife 41:10
wife's 10:16
William 2:2 4:8
willing 5:25 6:7 28:6 37:25
Wilson 3:9 8:21,21,22 9:3
window 49:8,9
wire 48:6
wished 31:17
wishes 41:3
witness 28:12 30:19,23 31:11
woman 41:12
wonderful 29:9,12 30:11 41:10
won't 17:10 33:9 49:14 50:15 52:8
wording 14:8
words 5:18 10:9 22:19 38:19
work 20:19 22:11 27:11 29:22 32:22
worked 30:14,14
working 46:22,23
World 4:17
wouldn't 37:2
write-ups 39:4
writing 46:6
written 46:16,18
W-2 46:10

X

Xanax 52:6

Y

Yeah 15:22
year 22:17 29:15
years 7:1 20:4 45:14 51:23
yesterday 5:3 7:24 35:9
York 1:16
you're 30:23 41:6

Z

zero 27:16

$

$1.36 37:22
$1.5 23:24 27:14,17
$10,000 6:10
$100 47:8
$100,000 37:14
$2 50:25
$6.2 26:10 27:21

0

02-20473-CR-CMA 1:3

1

10 3:5,7 12:19,24 15:25 16:10,16,23 18:23 24:18
   38:12 39:6
10th 51:8
1019 10:2
108 7:16 8:4
11th 17:5,7 26:3,6
113 17:6
1155 1:21
117 17:6
13th 31:22
14 1:7
1400 1:16
15 5:19 24:17 38:12,25 39:3
17 3:8

18 15:1 20:9 21:16 26:22 27:11 42:22 51:25
1995 26:7
1998 28:22
1999 25:1

2

2d 10:2,3
20005 1:17
2001 17:7
2002 38:7,25
2003 25:3
2005 1:7 10:2,4 34:12 38:8
202/305-9800 1:17
22 47:21
23 12:15 43:16
24 23:18 45:3
26 3:6 8:10 44:1
267 17:6
27 23:14
27422 2:4
28 2:12,13
29 7:15,20 26:5 43:20

3

3 8:3,6,10,13 10:23
30 46:6
301 1:22 53:6
305/523-5518 1:22 53:7
305/523-5519 53:7
32 20:8
33128 1:22
33128-7792 53:7
35 32:10
355 10:1
3553 42:22 44:19
3553(a)(1) 26:23
3553(a)(2)(A) 20:9
3553(a)(2)(D) 21:16
36 21:17 44:6
366 10:3
3663(d)(5) 15:24
3664 15:21
3664(a) 15:1

4

4 9:13 24:12
4th 51:8
4.3 26:11
40 6:21 22:20,25 23:17 25:13 31:7 32:11 44:6
404 1:22 53:6
4106 1:16
415/460-1430 2:8
46 23:13,21 25:22
47th 8:17

5

5 10:6 24:19 34:16
5G1.1 7:17
5H1.1 24:12
5K1.1 7:12 26:4 27:8
5K2.12 24:11
5K2.20 24:12
5th 18:3,8,17 34:11 36:9 47:10 49:8 51:10
50 19:25 21:5
500 39:2 51:18,21
51 23:20
53 2:14
580 10:3

6

6 21:5
6.2 21:12 27:20
60 7:16,19,21 8:5 12:14 13:10 22:23,24 23:1,14
   26:4 43:19 44:5,24
638 26:6
64 26:6

7

7 3:4
72 45:16

8

8 3:3,9 10:14
8th 50:5,6
8:30 18:18
80-years-old 40:15
85-year-old 40:20
87 7:2,16 8:4 23:14 25:21 43:17

9

9 10:23 52:1
9:47 42:12
90 12:25 14:17 15:19 16:3 17:8,11,12 40:15
910 2:7
92675 2:5
949/493-8115 2:5
94901 2:8